# The McCormick Harvesting Machine Company *v.* W. H. Nicholson.

*Evidence—Parol evidence—Written instrument.*

Parol evidence is admissible to alter, vary or contradict a written instrument where such evidence establishes an oral agreement contemporaneous with the execution of the written, and on the faith of which the instrument was executed.

*Sale—Warranty—Implied warranty.*

In purchases for a particular use made known to the seller, if the buyer relies on the vendor's judgment to select, and not on his own, there is an implied warranty that the article furnished is reasonably fit and suitable for that purpose.

*Sale—Inferior quality of rope.*

In an action to recover the price of rope which had been purchased for a designated purpose known to the seller, where the evidence showed

that one break was sufficient to determine the inferior quality of the rope, it is misleading for the court to charge that "one break would not under the circumstances be sufficient to justify the defendant in throwing the rope aside."

If a seller of rope warrants its quality, and the rope is not as guaranteed, the seller will be liable for any loss sustained by the purchaser as the natural and proximate result of furnishing inferior rope, unless the seller in some way contributes to the loss by using the rope after it was discovered to be of an inferior quality and unfit for the purpose for which it had been sold.

Argued April 10, 1900.   Appeal, No. 88, April T., 1901, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1897, No. 421, on verdict for defendant, in case of the McCormick Harvesting Machine Company v. W. H. Nicholson.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Assumpsit to recover the price of rope sold and delivered to defendant.   Before FRAZER, J.

At the trial it appeared that defendant was engaged as an oil well dealer or contractor, and as such he bought from Ewing & McCrum cables manufactured for and sold by the McCormick Harvesting Company.   The latter company was represented in Pittsburg by J. A. Hutmacher.   Ewing & McCrum took orders from Hutmacher.

When defendant was on the stand the following offer was made:

Mr. Patterson: We propose to show that Mr. Nicholson and Mr. Dewar went to Ewing & McCrum, agents for the plaintiff company in this case, authorized to sell these cables, and stated to them that they desired to purchase cables for the purpose of drilling oil and gas wells, and that they desired to purchase New York or Philadelphia cables; that thereupon the agents said to them that these cables which they offered to sell them were as good as the New York or Philadelphia cables, that they would guarantee them to be such, and that if they did not prove to be such they need not pay for them; to be followed by proof that Messrs. Ewing & McCrum were duly authorized agents on behalf of the plaintiff company to make this guaranty, and that the cables were found to be defective

and not such as were sold to them, and not such as were suitable for the purpose for which they were bought.

Mr. Johnston : Counsel for plaintiff objects to the offer for the reason that the contract to purchase these goods is in writing and contains the entire contract.   Secondly : That it does not appear by any testimony in the case that Ewing & McCrum are the agents of the plaintiff company, or that they had authority to make any statement or guaranty outside of the written contract in evidence shown by Exhibit No. 1.

Objection overruled and bill sealed for the plaintiff.   [1]

Plaintiff presented these points :

1. That if the jury believe from all the evidence in the case that Ewing & McCrum, the brokers who took the order from the defendants for the purchase of the goods in suit, gave to the defendants, without authority from the plaintiff, or Mr. Hutmacher, its agent at Pittsburg, the warranty that the cables were as good as New York or Philadelphia cables, or any other on the market, defendant's right of action for a breach of such warranty is against Ewing & McCrum who made it, and the verdict should be in favor of the plaintiff for the amount claimed, with interest.   *Answer :* Refused. [3]

3. If the jury believe that Ewing & McCrum requested Mr. Hutmacher, agent for plaintiff, prior to the date of sale to defendants, to give them authority to warrant drilling cables sold by them, and such request was refused, Ewing & McCrum had no authority to make the warranty claimed by defendant, and plaintiff is not liable to defendant for any breach of it. *Answer :* Refused. [4]

4. If the jury believe from the evidence, that the defendant, Nicholson, continued to use the cable at the Kenton well after it broke the first time and after he had knowledge of its defects, or an opportunity to know them, he did so at his own risk and cannot recover in this action for any loss he sustained by using it after he had knowledge of its defective character. *Answer :* One break would not under the circumstances be sufficient to justify the defendant in throwing aside the cable used at the Kenton well; but if the defendant, or his employees, examined the cable after its first break, and found it to be imperfect, in either material or workmanship, and after that continued to use it and the accident happened thereafter, the

continued use was at defendant's risk and no recovery can be had in this case for loss sustained at the Kenton well. [5].

6. If the jury should find from all the evidence that the cables in suit were warranted by Ewing & McCrum, the brokers, as alleged in the evidence, and that such warranty was given by authority of the plaintiff company, or its agent, Hutmacher, the plaintiff is not liable to defendants for any loss. sustained by using the cables. If the warranty was that the cables were as good as New York or Philadelphia cables, or any other cables on the market, and if they did not prove to be so defendants would not have to pay for them, the loss by plaintiff of the price or value of the cables is the measure of the damage plaintiff would be liable for for breach of such warranty.   *Answer :* If Ewing & McCrum warranted the cables to be as good as New York or Philadelphia cables, or any other cables on the market, and the cables were not as guaranteed to be, the plaintiff would be liable for any loss sustained by defendant as the natural and proximate result of the furnishing an inferior cable. [6]

Verdict for defendants with certificate for $500.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions.    (2) The charge, quoting it.    (3–6) Above instructions, quoting them.

*Chas. M. Johnston*, with him *S. A. Johnston*, for appellant.— The question of the authority of the vendor's agent to bind his principal by a warranty can arise only in relation to express warranties : Wood Mowing & Reaping Machine Co. v. Crow, 70 Iowa, 340.

Defendant was guilty of contributory negligence in relying on the alleged warranty without inquiry from the plaintiff company as to the authority of Ewing & McCrum to give it: Wharton on Agency, sections 137–139; Fox v. Everson, 27 Hun, 355; Melvin v. Wood, 3 Keyes, 533; Starkweather v. Kittle, 17 Wend. 21; Parsons v. Sutton, 66 N. Y. 92.

*D. F. Patterson*, with him *Boyd Crumrine* and *J. P. Patterson*, for appellee.—The order procured by means of the warranty given by Ewing & McCrum was accepted by the ap-

pellant, and some of the cables shipped to the appellee. The appellant accepted the order cum onere: Mundorff v. Wickersham, 63 Pa. 87; Wheeler & Wilson Mfg. Co. v. Aughey, 144 Pa. 398.

When a principal, and especially a corporation, appoints an agent to transact its business, such as the sale of its commodities, and the agent exceeds his authority, the principal, as to third parties, is bound by the act of its agent: Brooke v. New York, etc., R. R. Co., 108 Pa. 529; McNeile v. Cridland, 168 Pa. 16.

Where defective property is sold and damages result, the defendant cannot only refuse to pay the value of the property, but he may recover the damages sustained by him in the use of the property, provided the use of the property was the proximate cause of the damage, if it was such loss as would naturally follow in the use of the machinery, or in this case, say, of these articles: Erie City Iron Works v. Barber, 106 Pa. 125; Pennypacker v. Jones, 106 Pa. 237.

OPINION BY BEAVER, J., May 23, 1901:

This case may be best disposed of by considering the assignments of error seriatim.

1. This offer by defendant to show, by parol, the circumstances which led to the order for cables introduced by the plaintiff was clearly admissible. "Parol evidence is admissible to alter, vary or contradict a written instrument where such evidence establishes an oral agreement contemporaneous with the execution of the written, and on the faith of which the instrument was executed:" 6 P. & L. Dig. of Dec. 10244.

2. The entire charge is assigned for error. We gather from the argument, however, that the assignment is made upon the ground that the charge was misleading, and that the theory of the law governing the questions which arose in the case was erroneous. As these questions, however, are raised by the points for charge submitted by the plaintiff and the answers thereto, they are fully covered by what is said in regard to the subsequent assignments.

3. The questions raised by the third and fourth assignments relate to the authority of Ewing & McCrum, the brokers who sold the defendants the cables, to make an express warranty as

to their quality, the plaintiff alleging that, if no authority for an express warranty existed, the plaintiffs had a right to recover the full amount of the price of the cables with interest, as claimed in their statement.    These points were properly refused by the court, because they left out of view entirely the question of implied warranty under which the liability of the defendants was legitimately raised.    " In purchases for a particular use made known to the seller, if the buyer relies on the vendor's judgment to select and not on his own, there is an implied warranty that the article furnished is reasonably fit and suitable for that purpose : " Benjamin on Sales, 7th American edition (1899), 686.    The testimony is clear and is not contradicted, that the defendants sought to purchase from Ewing & McCrum cables of a particular make—Philadelphia or New York.    The brokers, who were informed as to the purpose for which the cables were to be used, offered to sell those of another make, representing that they were as good for the purpose as those known in the trade as New York and Philadelphia cables.    The purchase was made upon these representations, the defendants knowing nothing whatever of the character of the cables, of their place of manufacture or of their reputation for quality.    Their order was based entirely upon the representations of the brokers.    Whether, therefore, these gentlemen, as they alleged, were authorized to make an express warranty as to quality or not, the facts raised an implied warranty upon which defendants could rely.    The opinion of LORD, J., in Morse v. Union Stock Yards, 14 L. R. A. 157, fully reviews the authorities on the question of implied warranty on a sale by description for a particular purpose which apply in the present case.

4. Although the answer to the plaintiff's fourth point seems to be in effect an affirmance of it, it is not consistent.    It begins with the distinct affirmative statement that "One break would not, under the circumstances, be sufficient to justify the defendant in throwing the cable used at the Kenton well aside." This, it is true, is qualified by what follows : " But, if the defendant or his employees examined the cable after its first break and found it to be imperfect in either material or workmanship, and after that continued to use it and the accident happened thereafter, the continued use was at defendant's risk and no recovery can be had in this case for loss sustained

at the Kenton well." The testimony of one of the defendants clearly shows that he did examine the rope after its first break; that he found it inferior as to quality and unfit for the purpose for which it was in use. He said, in his examination in chief, in answer to the question: " Q. State what you found the character of this rope to be—the quality of it. A. Well, it appeared to be—I don't know what you would call it—sort of mouse-nest looking stuff. You could just pull it all apart like —well, I don't know what. It was not manila; it couldn't have been; sort of a short stuff put together I suppose. It appeared to break right off. There was no life in it at all." This opinion as to the quality of the rope was evidently reached after the first break, for in his cross-examination he says: " Q. Did you examine the rope after the break? A. Yes, sir; I examined the piece of rope after we cut it out. It was on the tools laying on the ground swelled up bigger than my leg. Q. Did you examine the end of the rope that was in the well that you pulled out? A. Yes, sir. Q. Then how long did it take you to get the tools out? A. Oh, we got them out four or five or six hours, I suppose. It wasn't very deep—no cave, and nothing to keep us from getting them out. I fished the tools and cut it off possibly fifty or sixty feet above where it broke. I says: ' Try it again; a new cable should not break like that.' " Again, in his cross-examination: " Q. You said you examined it after each break? A. Yes, sir. Q. Could you determine the character of it at the first break as you have explained? A. Well, I couldn't determine what it was, for I never had got a hold of such a rope before. Q. Could you, from your knowledge and experience, tell whether it was a good rope or a bad rope after the first break? A. Yes, sir, I could tell the rope was inferior. It was made out of some short manila, if you call it that; you could pull it all apart. Q. You noticed that at the first break, did you? A. Yes sir." Under these circumstances, therefore, as testified to by one of the defendants, one break was sufficient to determine the inferior quality of the rope, and would have clearly justified the defendant in throwing it aside. The tendency of the answer was, therefore, misleading. It is possible that the court intended to say, " One break would not, under ordinary circumstances, be sufficient," etc., and that would have been entirely

responsive to the point, and, with the qualifying phrase which followed, would have been entirely harmless.  As it is, however, we think the jury may have been misled.

5.  The answer to the plaintiff's sixth point should have been qualified.  It sufficiently shows the character of the point, and was as follows : " If Ewing & McCrum warranted the cables to be as good as New York or Philadelphia cables or any other cable on the market, and the cables were not as guaranteed to be, the plaintiff would be liable for any loss sustained by defendant as the natural and proximate result of the furnishing an inferior cable."  To this should have been added the qualification, " unless the defendants in some way contributed to that loss by the use of the cable, after they had discovered it to be of an inferior quality and unfit for the purpose for which it had been sold."

The fifth and sixth specifications of error are, therefore, sustained.  All the others are overruled.

Judgment reversed and a new venire awarded.