# Maust, Appellant, *v.* Creasy.

*Contracts—Custom—Parol testimony—Charge—Harmless error.*

1. Where a written contract deals with a particular subject the contract is the law governing the parties as to the particular subject, and parol testimony of a trade custom is inadmissible to vary the terms of the contract. The admission of such testimony becomes harmless error if the court in its general charge and in an answer to a point eliminates from the consideration of the jury all such testimony.

2. Where a lumbering contract provides that the contractors shall cut and remove the lumber at one continuous operation, and there is nothing in the contract which compels the contractors to keep their mill upon the land of the owner until the manufacture of the timber upon the whole tract had been finished, the fact that the contractors moved their mill from the owner's land to another tract for their convenience, will not affect their rights under the contract, provided there is no break in the continouus operation of lumbering.

Argued March 7, 1910. Appeal, No. 17, March T., 1910, by plaintiff, from judgment of C. P. Columbia Co., Dec. T., 1907, No. 218, on verdict for plaintiff in case of Jacob H. Maust v. Creasy & Wells. Before Rice, P. J., Henderson, Orlady, Head, Beaver and Porter, JJ. Affirmed.

Trespass to recover damages for an alleged wrongful cutting of timber. Before Evans, P. J.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $171.59. Plaintiff appealed.

*Errors assigned* among others were (1, 2) the exclusion of testimony relating to the custom of the trade, and (3–6) various instructions sufficiently appearing by the opinion of the Superior Court.

*H. M. Hinckley* and *C. S. Small*, for appellant.—The admission of testimony showing a custom or rule of trade contravened the express terms of a written agreement:

Keener v. Bank, 2 Pa. 237; Hartje v. Collins, 46 Pa. 268; Stoddard v. Emery, 128 Pa. 436; Atkins v. Howe, 35 Mass. 16; Mulliner v. Bronson, 14 Ill. App. 355.

Where an owner of standing timber, by articles of agreement, grants, bargains and sells the same to another, and it is stipulated that the grantee shall cut and remove the said timber or on before the day mentioned, all timber remaining uncut on the day mentioned will revert to the grantor, whether there are words of reversion or not in the articles of agreement: Bennett v. Vinton Lumber Co., 28 Pa. Superior Ct. 495; Saltonstall v. Little, 90 Pa. 422; Boults v. Mitchell, 15 Pa. 371.

*John G. Harman*, with him *Fred Ikeler*, for appellee.— The admission of evidence showing a custom was proper: Roland v. Eckman, 12 Pa. Superior Ct. 75; Woodward v. Traction Co., 17 Pa. Superior Ct. 576; Wills v. Hardcastle, 19 Pa. Superior Ct. 525; Dunham v. McMichael, 214 Pa. 485.

The construction placed by the court upon that part of the written agreement requiring the defendant to take off all the timber at one time was proper: Dixon-Woods Co. v. Glass Co., 169 Pa. 167; Smith's Est., 210 Pa. 604; Fisher v. Realty Co., 38 Pa. Superior Ct. 458; Stafford v. Walker, 12 S. & R. 190.

OPINION BY BEAVER, J., May 12, 1910.

This suit is based upon a written contract. Its execution is not denied. There was neither fraud, accident nor mistake alleged which permitted the introduction of parol evidence in regard to its meaning. Its terms were plain and unambiguous. There were no art phrases or other peculiarities requiring the explanation of experts or others as to the meaning thereof. It was just such a contract as it was both the province and the duty of the court to construe: Shafer v. Senseman, 125 Pa. 310. Numerous authorities upon this subject are collected in 2 Vale, 3897–8. The court, in the end, did construe it, and, as we think, did so correctly.

Before this construction was finally given, however, some things occurred of which the appellant very properly complains. They are contained in the first and second assignments of error and relate to the admission of parol testimony as to the custom of the trade with regard to the use of slabs for fuel purposes. The contract deals with this subject and, as to it, it was the law governing the parties thereto. Any custom, special or general, could not, in the nature of the case, affect the parties who had voluntarily agreed as to what the law should be, as between them, in their written contract. The admission of this testimony was, of course, therefore, improper, and, if there were nothing else in the case, it would be necessary to reverse it and send it back for a new trial, but whatever might have been harmful because of the admission of the evidence complained of was rendered entirely innocuous, as we view it, by what the court said in its charge to the jury.

As to that subject, as complained of in the third assignment of error, the court said: "There was considerable testimony offered as to the quantity of slabs that were made in the manufacturing of the lumber upon this tract. Now we will not go over that testimony. You are as well able to recollect it as we are, and in reaching your verdict upon that branch of the case, you must apply your good common sense to the evidence. As we said before, in our opinion, the plaintiff is entitled to recover in this suit from the defendant, the market value of the slabs that were used in this lumbering operation for fuel and for other purposes. You will also recollect the testimony, in arriving at the quantity, the testimony of the witnesses who testified that they required approximately one quarter of a cord of slabs for the manufacture of a 1,000 feet of lumber." This, as we understand it, quite fully instructed the jury in regard to the part of the contract relating to the slabs, which was: "The party of the first part reserves all slabs from the saw mill, and agrees to take them away from mill, if they get in the road of sawing, by being piled up in high heaps, so as to interfere with sawing the lumber."

The appellant, however, complains that the court did not

expressly and in terms withdraw the testimony which had been given in regard to the general custom as to the use of slabs for fuel in operations of this kind, and had said to the jury "You must apply your good common sense to the evidence." Prior to the portion of the charge complained of, however, the court had said: "By reason of the plain provisions of the contract in this case, we say to you that the plaintiff is entitled to recover in this case from the defendant the market value of the slabs used by the defendant in the lumbering off of the Maust tract. You must, therefore, determine what the market value of the slabs used for fuel and other purposes was. In other words, how many loads or cords of slabs were used for fuel and other purposes in the lumbering operation and what were they worth, what was the market value of the slabs at the time they were used upon the tract in Madison Township?"

But, in addition to this, the court also affirmed the point of the plaintiff upon the same subject, which was: "Under the written agreement dated August 21st, 1903, all the slabs from the saw mill were reserved to the plaintiff, Maust; if the jury believe that the defendant consumed any portion of the whole number of slabs produced in the operation, the plaintiff is entitled to recover the market value of the slabs thus consumed, together with what would be equivalent to interest on the same," which was answered "That proposition is affirmed. We have already in effect so charged you in our general charge."

The plaintiff, therefore, had the benefit of the general charge, which practically eliminated the testimony in regard to the general custom as to the use of slabs in lumbering, and also affirmed what the plaintiff at the trial thought was a sufficient instruction to the jury upon that subject. If the plaintiff had desired fuller instructions or had wished the court to put the subject in different form, so as to emphasize it to the jury, it was only necessary to have added to his point or to have put it in another form. Having attempted to instruct the court as to how that question should be ruled, it does not seem to us to be proper for him now to object that

the court did not go far enough when it affirmed all that it was asked to affirm by the plaintiff in his points for charge.

The other assignments of error relate to another part of the contract, which was construed by the court and was undeniably subject to its interpretation. There are two sentences or paragraphs relating to the same subject, which are: "The party of the second part agrees to leave all tree tops and fire wood on the ground, and to not unnecessarily destroy young saplings not bought, and to clean up or take off all the timber at one time, when saw mill is set on said tract, reserving, however, the right to go on said tract and remove some or few trees from time to time before mill is set."

. . . . . "Party of second part agrees to leave the roads from woods to public road in as good a condition when they are through crossing same as they found them before hauling across them, also agrees to set mill on said land for manufacturing said lumber. The party of second part agrees to give up and release all title or right to said timber, after the lumber is manufactured at the one time, referred to previously."

The plaintiff contends that, in view of the fact, which as we understand it is not denied, that the defendants removed the mill from the tract of land upon which the timber was cut around a hill upon a tract called the Greenley tract, so as to bring it into closer relations to a portion of the timber upon the tract upon which they were lumbering than it had occupied originally, they thereby forfeited the timber subsequently manufactured in the mill on the new location. As to that the court said: "Now, as to the third item in which plaintiff claims for timber that was removed from the tract after the mill had been removed to the Greenley tract. The agreement between the parties provides that the party of the second part, Creasy & Wells, agrees to clean up or take off all the timber at one time when saw mill is set on said tract, and also to set mill on said land for manufacturing said lumber, and agrees to give up and release all title or right to said timber after the lumber is manufactured at the one time referred to previously.

"Our understanding and interpretation of the agreement

between the parties is that the agreement only requires the defendant to remove the timber from the tract at one continuous operation. The testimony is, as we recollect it, that the lumber was cut and removed at one continuous operation. It was testified that the men went right on cutting the trees in the woods while the mill was being moved around the hill on the Greenley tract. We, therefore, say to you that in our opinion you cannot allow this plaintiff anything for timber cut and removed from the tract in question after the mill was removed from the first setting to the Greenley tract. In other words, the only item or matter submitted to you is the question of the slabs."

This same question was further dealt with by the affirmance of the defendants' point in regard thereto and the refusal of the plaintiff's point relating to the same subject.

The interpretation of the court seems to us the fair one under the circumstances. There was nothing in the agreement which compelled the defendants to keep their mill upon the land of the plaintiff until the manufacture of the timber upon the whole tract had been finished. They were to take the timber at one operation and this, as we understand it, was done, the mill having been for convenience removed from the plaintiff's land to what is called the Greenley tract.

This practically disposes of all the questions involved in the several assignments of error, which are all overruled.

Judgment affirmed.