## Wolverine Glass Co. v. Miller, Appellant.

*Contracts—Warranty—Machine—Breach.*

1. Where defendant sells to plaintiff a machine to make bottles to be operated in conjunction with an automatic feeder, and warrants that the machine with the feeder will produce bottles of a specified kind, the court will construe the warranty to mean that the two appliances were intended to be a unit for manufacture, and that, unitedly operating, they would produce the bottles, and when they did not, whichever was at fault, defendant had breached his warranty, and was liable.

*Practice—Admission of testimony—Striking out — Neglect to request court to strike out—Waiver—Appeals.*

2. Where the court admits evidence but states that counsel may subsequently move to strike it out, and, several days thereafter, the court in its charge practically eradicates the testimony, and counsel makes no motion to strike it out, the admission of the evidence cannot be alleged as error on appeal.

Argued October 17, 1923. Appeal, No. 139, Oct. T., 1923, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1921, No. 1250, on verdict for plaintiff, in case of Wolverine Glass Co. v. William J. Miller. Be-

fore Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Affirmed.

Assumpsit for breach of contract. Before Shafer, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $35,000. Defendant appealed.

*Errors assigned* were, inter alia, various rulings and instructions, quoting record.

*Ernest C. Irwin,* with him *George D. Wick, Reed, Smith, Shaw & McClay* and *Watson & Freeman,* for appellant.—The burden is on plaintiff. He must locate the fault as that of defendant. The damage must have come from defendant's act, and plaintiff must so prove: Ott v. Boggs, 219 Pa. 614; Sandt v. Foundry Co., 214 Pa. 215; Ahern v. Melvin, 21 Pa. Superior Ct. 462; Bannon v. R. R., 29 Pa. Superior Ct. 231; Boehm v. Boro., 4 Pa. Superior Ct. 385; Shaeffer v. Twp., 150 Pa. 145.

. Plaintiff's pleadings are based entirely on the joint action of the "machine" and the "feeder" and there is no averment that the cause of failure lay in the "machine."

Where the trial court, under objection, admits improper evidence, the error is not cured by a mere instruction to the jury to disregard the evidence so admitted: Rosenstiel v. Ry., 230 Pa. 273; Del. Hudson Canal Co. v. Barnes, 31 Pa. 193.

*Don Rose,* of *Rose & Eichenauer,* with him *R. A. Applegate* and *Guy D. Henry,* for appellee.—It was not in fact essential to plaintiff's case to prove that the failure to make bottles was due to the machine, rather than the feeder, and, in so holding, the trial court erred against plaintiff.

There was no reversible error in respect to the admission of, or failure to strike out, the testimony tending to

140   WOLVERINE GLASS CO. *v.* MILLER, Appellant.

prove a parol warranty: Osborne & Co. v. Walley Bros., 8 Pa. Superior Ct. 193; McCormick Harvesting Co. v. Nicholson, 17 Pa. Superior Ct. 188; Croyle v. Land Co., 233 Pa. 310.

OPINION BY MR. JUSTICE SCHAFFER, January 7, 1924:

Defendant appeals from a judgment recovered in an action in which damages were sought for breach of warranty in the sale of a bottle-making machine.

Plaintiff was equipping a plant to manufacture glass milk bottles and defendant sold to it a machine for that purpose under a written contract, in form a proposal, the material parts of which, so far as this controversy is concerned, are: "We propose to furnish you the following equipment: 1 Model PC type Geneva movement machine,......This machine is to be suitable for making a general line of wide mouth bottles from 2 to 64 oz. capacity.   Accommodates 6 blank and 6 blow moulds mounted on the same table alternately, has a maximum working speed of 20 per minute......arranged for operation in conjunction with Miller Glass Engineering Co.'s automatic feeding device."

At the same time plaintiff purchased this machine, it also bought from the Miller Glass Engineering Company one of its automatic feeding devices mentioned in the contract.   In general terms, the function of the feeder was to draw molten glass from a furnace and deposit it in the mould on the machine, which fashioned it into a bottle.   The machine was useless without a feeder.   The defendant, Miller, was the inventor of this feeding device, and owned 990 out of 1,050 shares of the stock of the Miller Glass Engineering Company which held the patents for the feeder.   The engineering company and Miller had their place of business together, and the same plant, agents and employees.   The machine and the feeder were installed in plaintiff's plant simultaneously and by the same workmen.   When the time came to operate the machine, it would not produce bottles in

salable form, and, upon complaint by plaintiff, Miller sent workmen to its plant to endeavor to overcome the difficulties and make the machine fulfill the requirements of the contract. These efforts covered a period of five months following the installation of the machine, during which time plaintiff was required to make expenditures of considerable amount, no bottles being produced. At the end of the period named, endeavors to put the machine in working order ceased and plaintiff then brought this action to recover from defendant for breach of the warranty, damages represented by the amount it had paid on account of the machine and the cost of labor, fuel, materials and expenses up to that time, and recovered a verdict.

Defendant complains that the case was tried and submitted to the jury on a wrong assumption, that plaintiff's proofs were that the two machines working together would not produce the bottles and that the court at the close of the testimony ruled that his only responsibility was for the machine and not for the feeder, that, while this was the ruling of the court, there was no proof that the cause of the failure lay in the machine; that the court erred in charging in effect that, although defendant was liable only for the machine, he could be held for defects in either the machine or the feeder; appellant further complains that there was error in admitting evidence of an oral warranty in preliminary negotiations for the sale of the machine differing from the written one.

We think defendant's undertaking was much broader than he assumes it to be. He was not alone to furnish the bottle-making machine, but, in the language of the contract, such a machine "arranged for operation in conjunction with Miller Glass Engineering Company's automatic feeding device." The agreement was that, so arranged, "It is to be suitable for making a general line of wide mouth bottles." Defendant stipulated that the two appliances were together to be a working unit

to produce the commodity desired and recognized this, after the installation of the first feeder and when satisfactory results were not obtained, by seeing to it that another feeder was installed. Under the contract as made, it would not be within reason and common sense to say that, if the machine was perfect as a machine, although it would not produce bottles when arranged for operation in connection with the feeder, defendant's obligation under his contract had been discharged, any more than it could be tolerated that one who had agreed to furnish a steam engine, to be arranged for operation in connection with a certain kind of boiler, and when thus coupled up that it would produce a given horse power, had met the requirement of his undertaking by showing the installation of a perfect engine which however would not produce the result required when operated in connection with the boiler.

On the trial, plaintiff was unable to indicate specific defects in the machine and established its case by showing that the machine would not manufacture the bottles. It proved by the testimony of defendant himself that there was no fault in the feeder and argues from this that the imperfections must have been in the machine, although particular deficiencies could not be pointed out. Defendant's contention is that he was in no way responsible for the action of the feeder and that in order to entitle plaintiff to recover, it had to show that the fault was with the machine. With this we cannot agree. It was defendant's undertaking that the machine should be suitable to make a general line of wide mouth bottles, but not to do this in itself, but when "arranged for operation in conjunction with" the feeder. While appellant's position is that the case was tried on a wrong theory, that plaintiff's proofs were to the effect that the two machines working together were not a success, whereas the court ruled after the evidence was closed that defendant was liable only for the performance of the machine, our view is if this ruling was made as

broadly as the plaintiff sets up, which we think it was not, that this was an error made by the court against appellee, because, as we construe the contract, plaintiff was entitled to show that the two machines operated together would not produce salable bottles, and to have the determination by the jury on that proposition. This is made manifest by the issue tendered by the pleadings. Plaintiff set forth in his statement that "Defendant further expressly warranted and agreed......that the Model PC Geneva Movement Machine *would be arranged for operation in conjunction with said Miller Glass Feeder, and that when so arranged* would be suitable for making a general line of wide mouth bottles from 2 to 64 ounce capacity"; also that "Plaintiff avers that the two machines aforesaid, to wit, the Model PC Geneva Movement Machine and the Miller Glass Feeder were designed and intended to be operated together as one unit." These averments of the statement were admitted or not denied in defendant's affidavit of defense and were offered in evidence by plaintiff. Under them the jury was warranted in finding the undertaking of defendant was that the machine would operate in conjunction with the feeder, that they were designed and intended to be used together to make the bottles, that the two appliances were a unit for manufacture and that unitedly operating they would produce the bottles, and when they did not, whichever was at fault, defendant had breached his warranty and was liable. In addition to this, the correspondence between the parties shows the unity of the mechanisms and defendant's treatment of them as interdependent when he refers to them as "our feeder and machine."

Defendant by his proofs sought to establish that the failure to produce the bottles was not due to the machine, but to the plaintiff having furnished improper facilities and molten glass not in condition to make the bottles, and in the court below contended, as he does before us, that he was responsible only for the machine,

not for the feeder. The first was a valid defense, the second was not.

Another objection raised by appellant to the conduct of the trial is, that the court admitted testimony of an alleged oral guaranty which preceded the written contract of purchase. This testimony was that the agent of defendant in the preliminary negotiations for the purchase of the machine and the feeder said: "This PC Geneva Movement Machine, working in conjunction with the Miller Feeder, would produce, he would guarantee it to produce, at the rate of twenty quart milk jars per minute." When this testimony was received, a motion was made to strike out the words "he would guarantee it to produce at the rate of twenty quart milk jars per minute," the reason assigned being that the written warranty constituted the contract between the parties. The court declined to strike out the evidence at that time, but said the application to eliminate it could be renewed later if the circumstances as they developed called for such action. It was also testified by the same witness that plaintiff executed the contract because of this statement and guaranty, and a similar motion to strike out this statement was made and there was a like ruling. No further application by the defendant to strike the testimony from the record was made. In answer to a request for charge by appellant, the court said to the jury: "I am asked to say to you that the only warranty made by the defendant is as contained in the writings constituting the order for the machinery furnished by the defendant. That is what I have said to you several times already." Instead of making this request for charge, if the defendant had asked the court to strike out the testimony, it doubtless would have done so, as the answer to the request was tantamount to so doing. Having contented himself with the request and not having made the formal motion to strike out, appellant cannot now complain that the court did not adopt the latter alternative. What was done in effect eradicated the testi-

mony from the case. Previously in his charge, after adverting to this testimony, the court said: "Whether the conversation took place or not does not make any difference, because whatever was put in that contract in writing is all there is in the contract. That is what people make writings for, and therefore we have nothing to do with any talk they had before. That brings us down simply to this contract in writing." In the light of these positive instructions, it could not be successfully urged that the jury did not thoroughly understand that they were to pay no attention to the parol evidence and were to decide the case solely under the written contract. If they did not understand this plain direction, they did not comprehend anything that the court said in instructing them. To sustain his position that the quoted remarks of the court did not cure the situation, appellant cites to us Rosenstiel v. Pittsburgh Rys. Co., 230 Pa. 273; Heron v. Phipps, 246 Pa. 294; Penna. R. R. Co. v. Butler, 57 Pa. 335; and other cases of like import, in which it is ruled that, where evidence tending to prejudice the minds of jurors has been improperly received, the error is not remedied by an instruction to disregard it. That is not the case here. The evidence which was received could not in any way have prejudiced the defendant. It came into the case on the first day of a trial which lasted for fourteen days, and, when the case was submitted to the jury, the court completely eliminated the testimony from the jury's consideration in such a way as to leave no doubt in our mind that it played no part in their conclusion. In Reach v. National Bedding Co., 276 Pa. 467, the question was raised by the plaintiff on the trial as to the trade meaning of certain words and testimony was received to establish their meaning, which in the opinion of the court was not sufficient to establish it, and he directed the jury to disregard it. We said: "Appellant has no just cause to complain of the admissibility of the evidence, which was ultimately held insufficient, or of the charge on the subject, which fully protected its

rights, the court having instructed the jury that the words 'net weight' as used in the contract meant exactly what they said, and that a trade meaning for them had no application to the case." In Maust v. Creasy, 42 Pa. Superior Ct. 633, it was held that the admission of testimony as to a trade custom intended to vary the terms of a written contract became harmless where the court, in its general charge and in answer to a point, eliminated from the consideration of the jury all such testimony. Plaintiff contends that the evidence was admissible as a parol contemporaneous agreement, which was the inducing cause of plaintiffs entering into the contract, under such authorities as Croyle v. Cambria Land & Improvement Co., Ltd., 233 Pa. 310; Osborne & Co. v. Wally Bros., 8 Pa. Superior Ct. 193; McCormick Harvesting Machine Co. v. Nicholson, 17 Pa. Superior Ct. 188. The parol representation, as we read the testimony, was not made at the time the contract was executed, but some days prior thereto; this circumstance might have an important bearing on its admissibility. It may not be amiss to say that we are not disposed to widen the rule as to the admissibility of such testimony, but rather to narrow it and to hold persons to their contracts as they write them. We are not, however, required to determine the admissibility or nonadmissibility of the testimony for the reasons, first, that defendant did not renew his motion to strike it out of the case; "Defendant's counsel, at the close of the case, should have renewed his objection to the evidence by a motion to strike it out......The trial judge is not required to carry in his mind the details of the trial, and of his own motion strike out evidence": Burkett v. Van Tine, 277 Pa. 567; second, because the court in its charge completely eliminated this testimony as to the oral warranty and confined the inquiry solely to the written one; and, third, because it could have done defendant no real harm, as the oral warranty was substantially carried into the written one, which says the

machine "has a maximum working speed of 20 [bottles] per minute."

We discover no error in the record which would justify entering judgment for defendant or the granting of a new trial.

The assignments of error are all overruled and the judgment is affirmed.