United States Gypsum Company, Appellant, *v.* Birdsboro Steel Foundry & Machine Company.

Argued March 12, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Charles M. Price*, with him *Clarence G. Meyers* and *Duane, Morris & Heckscher*, for appellant.

*Robert T. McCracken*, for appellee.

OPINION BY RHODES, P. J., April 21, 1947:

This case arises out of the purchase of a hydraulic press by plaintiff from defendant. Plaintiff brought an action in assumpsit to recover damages for an alleged breach of an implied warranty of fitness for a particular purpose, and of certain express warranties and guarantees. Defendant obtained a judgment on its counterclaim.

We briefly recite the history of the proceedings prior to the argument in this court. Defendant filed a statutory demurrer to plaintiff's statement, asserting that, as a matter of law, there was, under the facts alleged in plaintiff's statement, no implied warranty of fitness for a particular purpose because a definitely described hydraulic press was ordered by plaintiff, and no breach of express warranties was shown. The court below, in an opinion by Judge OLIVER, held that plaintiff's allegations set forth a good cause of action on implied warranty of fitness for a particular purpose, and on certain express warranties. The statutory demurrer was overruled, and defendant was required to answer on the merits.

The contract price for the hydraulic press was $47,000. Plaintiff in its action sought to recover the cost of repairs and new parts in excess of $65,000. Defendant filed an affidavit of defense to the merits, and a counterclaim for parts and labor furnished in the sum of $6,039.89.

The case was tried before Judge LEVINTHAL, sitting without a jury. The trial judge made extensive findings

of fact and conclusions of law, and held that plaintiff was not entitled to recover for the alleged violation or breach of any implied or express warranty pertaining to the press. The trial judge accordingly found for the defendant in the amount of $939.89, representing cost of services furnished by defendant to plaintiff in installing certain new parts. Damages were assessed in the amount of $1,291.05, and judgment entered for defendant. Plaintiff's exceptions were dismissed by the court in banc. Plaintiff appealed to the Supreme Court, which in an opinion by Chief Justice MAXEY (*United States Gypsum Company v. Birdsboro Steel Foundry and Machine Company*, 355 Pa. 653, 50 A. 2d 666), held that the amount of the judgment on defendant's counterclaim was conclusive of the amount involved, and fixed the jurisdiction in the Superior Court; accordingly the appeal was remitted to this court.

Appellant's principal contention in this court, indicated by its statement of questions involved, concerns the burden of proof in cases of implied warranty. It urges upon us that it merely had to establish that the press failed to work; and that the court below erred on the question of burden of proof in that it required appellant to show not only (1) that the press failed, but also (2) that the failure was due to appellee's faulty design, and (3) that such failure was not due to appellant's faulty operation of the press.

Certain material facts appearing in the record are not questioned. Appellant desired to obtain a hydraulic press capable of exerting a pressure up to nine thousand tons on single mats of asbestos and cement, 4 feet 6 inches wide by 12 feet 6 inches long, for the purpose of manufacturing asbestos and cement shingles and siding for houses and other structures; and it prepared written general specifications of its requirements with respect to such a press, and sent copies thereof to a number of hydraulic press manufacturers, including appellee, inviting bids for the designing, manufacture, and installa-

tion of a press to be built in accordance with the said specifications. The press was to operate with an opening of 3 inches between the upper and lower steel plates or platens; the time of pressing was to be 30 seconds, reduced to 15 seconds with the aid of additional pumps.

In a letter dated June 27, 1936, appellee agreed to furnish appellant the 9,000-ton hydraulic press equipment. This letter, accepted by appellant, formed the written contract between the parties, and expressly guaranteed that the press would "be suitable to apply on a sheet 4'-6" wide by 12'-6" long, a total uniformly distributed pressure of 9,000 tons"; and that the equipment was "further guaranteed with proper care of valves and of contacts and other electrical devices to function continuously in the manner" described in the proposal, that is, to open to a 3-inch clearance and press a sheet in a total cycle period of not more than 52½ seconds, reduced by the addition of a pump to 37½ seconds. The agreement also contained an express guaranty "against defects in materials and workmanship under normal use and service"; but this was limited to replacement of defective parts during a period of one year from the date of shipment.

The press was installed in appellant's plant, and operation was commenced in February, 1937. Except for minor repairs and an incident in August, 1937, when a corner of a sheet was folded in pressing, the press operated properly for 22 months, or until December 19, 1938, when one of the three main pressure cylinders cracked. Appellant procured a replacement cylinder from appellee, which was of slightly heavier construction than the original. On February 21, 1939, a second cylinder cracked, and thereafter main cylinders broke in June, July, August, and November of 1940.

On September 28, 1939, one of the six large bolts or columns broke, and upon examination all were found unsafe and had to be replaced. New bolts were ordered from and supplied by appellee. Thereafter, bolts broke in January and March, 1940, and in March of 1941.

Appellant purchased and paid for replacement of cylinders and bolts or columns, mostly from appellee, but in some instances from other manufacturers. Appellant paid appellee for some of the replacements furnished; as to others the trial judge found that appellee, by reason of certain letters it wrote after the breakage, agreed to furnish them without cost to appellant.

As previously stated, however, the trial judge refused to allow appellant to recover the cost of the replacements and the repairs to the press, and this he did on the ground that appellant had failed to prove to his satisfaction by a preponderance of the evidence a cause of action.

Appellee introduced in evidence the deposition of one Dudley F. Davenport who had been foreman on the press for appellant in 1937 during one of the eight-hour shifts. This witness stated that in August, 1937, the corner, 4 inches by 7 inches, of one sheet was folded in the press, causing damage which was thereafter repaired by appellant without notice to appellee. This witness did not actually see the pressing of the folded sheet, but he did see it after it was pressed; and he also observed the indentation in the lower platen. On the basis of this testimony in the record, the trial judge found in his ninth finding of fact: "Although the said machine was designed to press single sheets of uniform thickness, an asbestos sheet with a corner folded over for an area of 4 x 7 inches was permitted to run through the press in August, 1937, due to the negligence of the [appellant's] workman." This finding also sets forth: "As a result of the double thickness of the sheet, pressure of approximately 100,000 pounds per square inch was exerted on said fold, whereas the press was designed for a normal pressure of about 2000 pounds per square inch. In consequence, the filter bed and cast steel lower platen were crushed and the operating parts of the said press subjected to a severe and unusual strain."

The trial judge made 37 findings of fact. In addition to the express warranties contained in the written con-

tract, in his seventh finding of fact he found that there was an implied warranty that the press would be "so designed and constructed" as to "function in the manner set forth in the [appellant's] specifications."

It is undisputed that there were no defects in the workmanship or materials furnished by appellee. In the thirty-fifth finding of fact, the trial judge specifically found: "35. There were no defects in the materials or workmanship either in the construction of the original press or in the various replacement parts which the [appellant] subsequently purchased from the [appellee]." No exception appears on the record to this finding of fact. Appellant's request for findings of fact contained the following: "12a. It appears from the testimony that there were no defects in material or workmanship furnished by the [appellee]. The fault was one of design."

Appellant's witness, Lucian I. Yeomans, a consulting engineer, testified on direct examination: "Q. Now, you found nothing wrong in what you observed with the workmanship or the materials, did you? A. Not a thing. Not a thing. Q. And the thing you described here as the fault with the cylinders you have stressed is a matter of design, is that correct? A. Strictly design."

It seems clear to us, and we think it is necessarily so on the facts, that the essence of appellant's cause of action was an alleged breach of an implied warranty of fitness for a particular purpose in that the press was improperly designed and constructed. Paragraph 11 of the statement of claim averred: "The said press was not of the quality, nor of the condition, nor was it capable of performing as represented and warranted. The said press was of improper design and construction, was unfit for the purpose intended, did not perform continuously in the manner aforesaid, and did not operate as warranted."

Paragraphs 12, 13, and 14 of the statement alleged breach of the implied warranty of fitness in that the

various parts which broke were of improper design and construction.

At the trial, appellant's testimony established the several breakdowns of the press in the manner and at the times to which we have previously referred. And it further introduced testimony of its experts that the cylinders and bolts were not properly designed, and were not of sufficient strength to meet the purpose for which the machine was intended. Appellee replied with the testimony of its experts to the effect that the press was properly designed and constructed, and that, although some authorities considered thicker cylinder walls necessary, it used a steel made by a secret process which gave strength without bulk and a safety factor over five times the required strength. Confronted with this conflicting evidence as to faulty design of the press, the trial judge made the following pertinent findings:

"36. Whether or not there were defects in the [appellee's] design of the said press with respect to the sufficiency of the thickness of the walls of the cylinders, or with respect to the size and thickness of the columns and nuts, or with respect to the capacity of the pump, or in any other respect, is conjectural and I have not been satisfied by a preponderance of the evidence that there were any such defects in the design of the press.

"37. What caused the various parts of the press to break is also conjectural. It may have been due to alleged defects in the design of the press. It is no less likely that the design of the press had nothing to do with said breakages, but that they were the result of the severe strain placed upon the press by reason of the accident described in Finding of Fact #9. I am therefore not satisfied by a preponderance of the evidence that the [appellee] violated any of the express guarantees set forth in the [appellee's] written proposal . . . or that the [appellee] breached its implied warranty . . ."

The trial judge, in rendering his decision in favor of appellee, went on to say that in any event appellant

was barred from recovery because "[appellant] failed to give notice to the [appellee] of its intention to hold the latter liable for alleged breach of warranty within a reasonable time after the [appellant] discovered or should have discovered the alleged breach. . . . It was not until January, 1940, that the [appellant] unequivocally asserted its intention to hold the [appellee] liable for its alleged breach of warranty. Under all the circumstances, I am satisfied that the [appellant] delayed for more than a reasonable time in asserting its claim." [1] This phase of the case we shall consider later in the opinion.

Appellant strongly contends that the trial judge placed upon appellant a burden greater than the law required, but we are of the opinion that such contention is without merit. Appellant's present untenable position is due to the fact that it failed to convince the trier of fact in matters essential to its recovery on the cause of action alleged. It waived a jury trial and submitted its case to the trial judge, who thereby had power to decide all factual issues. Findings of fact made by the judge, sitting without a jury, and affirmed by the court in banc, have the force and effect of a jury's verdict, and, if supported by the evidence, will not be disturbed on appeal. *Tinius Olsen Testing Machine Co. v. Wolf Co.*, 297 Pa. 153, 156, 146 A. 541; *Perletto v. Lancaster Avenue Building & Loan Ass'n et al.*, 353 Pa. 366, 370, 45 A. 2d 10; *Berry v. Eastman et ux.*, 156 Pa. Superior Ct. 349, 350, 40 A. 2d 102. It is not asserted that any of the findings was arbitrarily or capriciously made.

---

[1] The Sales Act of May 19, 1915, P. L. 543, § 49, 69 PS § 259, provides: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor."

The burden is upon the person alleging a breach of warranty to establish by proof the warranty and the breach thereof. *Sprout, Waldron & Co. v. Eagal,* 193 Pa. 389, 44 A. 453; *Miller v. James Smith Woolen Machinery Co.,* 220 Pa. 181, 184, 69 A. 598; *John A. Johnson & Sons, Inc., et al. v. United States, to use of Baltimore Brick Co.,* 4 Cir., 153 F. 2d 534, and cases cited page 538. In *Wood Motor Car Co. v. Tobin et al.,* 120 N. J. L. 587, 1 A. 2d 199, at page 200, Justice TRENCHARD stated: "The general rule applicable here is that the breach of a warranty must be proved as laid; and the universal rule is that the burden of proof is on the party relying on the alleged breach of a warranty to show the breach thereof. 55 C. J. 837, and cases there cited."

We think it is clear, from a reading of the trial judge's adjudication, that he imposed no greater burden upon appellant than the burden of proving the essentials of its cause of action by a preponderance of the evidence. The trial judge rejected appellant's claim, not because he imposed on appellant a burden of proof heavier than it was legally bound to meet, but because appellant failed to carry the burden of persuading the trial judge, as the trier of fact, that its evidence (which we may assume to be sufficient to establish a cause of action if believed) should be believed and accepted. This appears both from the trial judge's adjudication and the opinion of the court in banc dismissing appellant's exceptions to the adjudication. In its opinion the court in banc states that the trial judge "found that the [appellant] had failed to meet the burden of persuading him as to the truth of the basic propositions essential to recovery by it in this case." The trial judge did not require appellant to prove that the operating accident in August, 1937, did not cause the press to break 16 months later, and that the failure of the press did not result from improper operation generally by appellant. The extent of the burden of proof which the trial judge imposed upon appellant was to establish the essential averments of its cause

of action as laid. But where a negative is essential to the existence of a right, the party claiming the right generally has the burden of proving such negative. *Carl v. Grand Union Company*, 105 Pa. Superior Ct. 371, 375, 161 A. 429.

Appellant argues that, in order to establish breach of the implied warranty of fitness, the only proof required was that the press, after operating 22 months, broke down and failed to function, and that it was not required to go further and establish any reason for the failure of the press. Appellant relies upon such cases as *Wolverine Glass Co. v. Miller*, 279 Pa. 138, 123 A. 672; *Industrial Sales Engineering Co. v. Agisim*, 7 N. J. Misc. 648, 147 A. 45; *Brandtjen & Kluge, Inc., v. Lucas*, 153 Kan. 138, 109 P. 2d 197; *Burkett v. Oil Automatic Heating Corporation*, 241 Mich. 634, 217 N. W. 897. These cases set forth the rule that, where the goods or machinery bought does not perform the function for which it was sold or made, the buyer establishes a breach of the implied warranty of fitness without showing what the specific defect was which prevented the article from performing as warranted. These authorities are not applicable. In *Wolverine Glass Co. v. Miller, supra*, 279 Pa. 138, 123 A. 672, the failure was self-evident from the beginning; when the time came to operate the machine it would not produce as warranted. In the present case the press operated perfectly, with minor repairs, for 22 months, 24 hours a day, 6 days a week. Consequently, appellant was not able to show a breach of any implied warranty by proof that the machine never functioned. It was essential to appellant's cause of action that it establish that the press was of such improper design and construction that it did not operate continuously beyond the 22 months' initial operation. It follows, under its averments, appellant made out no cause of action if it failed to prove improper design and construction.

We are convinced that appellant on this appeal attempts to present its case on an entirely different theory from that relied upon by it before the trial judge. Appellant, in the court below, did not contend or proceed on the theory that it was sufficient for it to assert and establish that the press failed after 22 months' operation. It averred, and by its proofs sought to establish, that the failure of the press was due to improper design and construction. In the court below appellant's requests for findings of fact and conclusions of law are based on the theory that the press failed due to improper and inadequate design and construction by appellee.[2]

Before us appellant asserts that it is entitled to recover on the theory that the mere failure of the press after 22 months of operation is in itself a breach of the implied warranty that the machine was reasonably fit for the purpose intended because it did not operate for a reasonable length of time after installation. We may assume that this is a possible ground of recovery, but it is not the theory upon which appellant tried the case, and the trial judge was not asked to, and did not, pass upon any such issue. A party cannot argue his case upon an entirely new and different theory from the one put forward at the trial. *Howard v. Siegel,* 121 Pa. Superior Ct. 519, 525, 184 A. 272; *Middletown Borough v. Pennsylvania Public Utility Commission,* 143 Pa. Superior Ct. 444, 447, 17 A. 2d 904; *Weiskircher v. Connelly,* 256 Pa. 387, 389, 100 A. 965; *Mayer v. Chelten Avenue Building Corp.,* 321 Pa. 193, 195, 183 A. 773; *Kramer v. Pittsburgh Coal Co.,* 341 Pa. 379, 382, 19 A. 2d 362.

Appellant cites and relies upon cases holding that where a statement of claim or pleading contains averments beyond those essential to the cause of action,

---

[2] Appellant submitted the following request for conclusion of law (No. 12) : "The plaintiff [appellant] has shown, by a preponderance of the evidence, that the inadequate design of the press was responsible for the repeated failures of the press."

a party is not bound to prove the immaterial and superfluous averments in order to recover. Appellant derives no support from these authorities, because, as its case was pleaded and tried, the averments of improper design and construction of the press were essential to appellant's cause of action, and in no sense were they immaterial or superfluous.

We agree with the court below that there is an additional reason why appellant cannot recover in this action. Assuming that appellant convinced the trier of fact of a breach of an implied warranty—whether such breach was shown (1) by reason of faulty design, or (2) on the theory that the press did not operate without breakage for a reasonable length of time after installation—appellant would be barred because the trier of fact held that notice of the alleged breach of warranty or warranties was not given within a reasonable time after appellant knew or should have known of the breach —that appellant delayed for more than a reasonable time in asserting its claim.

Under section 49 of the Sales Act of May 19, 1915, P. L. 543, 69 PS § 259, if the buyer fails to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor. Where more than one inference may be drawn from the proved facts, the question of what is a reasonable time for giving notice of breach of warranty is a question of fact for the jury; where the facts are undisputed and but one inference can be drawn, it becomes a question of law for the court. *Tinius Olsen Testing Machine Co. v. Wolf Co.*, supra, 297 Pa. 153, 157, 158, 146 A. 541; *Truscon Steel Co. v. Fuhrmann & Schmidt Brewing Co.*, 327 Pa. 10, 13, 192 A. 679; *Hobart Mfg. Co. v. Rodziewicz*, 125 Pa. Superior Ct. 240, 248, 189 A. 580; *Mayflower Sales Co. v. Frazier et al.*, 325 Ill. App. 314, 60 N. E. 2d 123, 124; *Texas Motorcoaches, Inc., v. A. C. F. Motors Co.*, 3 Cir., 154 F. 2d 91, 95; Annotation, 72 A. L. R. 726, page 753.

Appellant, however, submitted its case to the judge sitting without a jury, and one of the issues was whether its notice of breach of warranty was given within a reasonable time. The trial judge concluded that: "Under all the circumstances, I am satisfied that the [appellant] delayed for more than a reasonable time in asserting its claim." Findings of fact may be based on proved facts or inferences therefrom. This finding depended upon inferences from established facts, and was, under the evidence in this case, a mixed question of law and fact. The press was installed in February, 1937, and operated properly until one of the large cylinders broke in December, 1938. At appellant's request, appellee sent an engineer who discussed the breakage with representatives of appellant. On December 23, 1938, appellant ordered a new replacement cylinder. Another cylinder broke in February, 1939; appellant asserted no claim for breach of warranty, but ordered another replacement cylinder. In a letter to appellant, appellee stated that these cylinders were made heavier than the original cylinders. On August 7, 1939, appellant, in a letter to appellee, claimed credit for the cost of two replacement cylinders, but made no claim beyond that. Again, when the columns or bolts broke on September 28, 1939, appellant gave no notice of any claim for breach of warranty but ordered replacements. It was not until January 24, 1940, that a vice-president of appellant wrote a letter to appellee which could be, and was, interpreted as showing an unequivocal intention on the part of appellant to hold appellee liable for defects in the press. Certainly, under these facts, we cannot declare, in the face of the trial judge's finding,[3] that, as

---

[3] Finding of Fact No. 29: "Under all the circumstances, the delay of the plaintiff [appellant] in not sooner making its said investigation and in failing to give to the defendant [appellee] earlier notice of the alleged breach of warranty and of its intention to hold the defendant [appellee] responsible therefor, was unreasonable."

Conclusion of Law No. 10: "By reason of its failure to assert its claim against the defendant [appellee] within a reasonable time

a matter of law, the notice by appellant was given within a reasonable time. See *Aaron Bodek & Son v. Avrach*, 297 Pa. 225, 229, 230, 146 A. 546. Appellant asserts that appellee, by its conduct in investigating the breaks and furnishing replacements, waived notice of claim for breach of warranty. But such conduct was an inherent part of the question of reasonable notice of claim for breach of warranty in general, which was therefore, under the evidence in this case, a mixed question of law and fact. Appellant's position on this branch of the case, as on the other one, is also untenable as the trier of fact resolved the factual issues against it.

Finally, appellant contends that the court below erred in making a conjectural finding [4] that the single operating accident in August, 1937, might have caused all of the failures complained of by appellant. Appellant's sixth assignment of error relates to the admission of the deposition of the witness Davenport, and the subject of appellant's seventh assignment of error is the trial judge's ninth finding of fact. The deposition was not inadmissible because it was hearsay, and the ninth finding of fact was supported by the evidence.

The witness Davenport, as we have previously stated, did not actually observe the pressing of the folded sheet of asbestos and cement. He did say, however, that he observed the folded sheet and the indentation in the platen the next day when his attention was called to them. The circumstances, together with actual observation on the part of Davenport, were sufficient to support the trial judge's ninth finding of fact. The alleged turn-over occurred on a corner of the press away from the operator, and, with only a daylight opening between

---

after it knew or should have known of the defendant's [appellee's] alleged breach of promise or warranty, the plaintiff [appellant] is barred from now asserting such claim against the defendant [appellee]."

[4] Thirty-seventh Finding of Fact—Fourth Assignment of Error.

platens of 3 inches, it is doubtful whether any eyewitness could be found who actually saw the folded sheet pressed.

The trial judge did not find that the pressing of the folded sheet in August, 1937, actually caused the subsequent failures of the press. What he did find was that it was entirely conjectural, under the evidence, as to what caused the press to break. The finding to which appellant objects was not of controlling consequence in the trial judge's adjudication. The finding on the main issue was that the trial judge was not convinced the failure of the press was due to appellee's alleged act of faulty construction or design. In so far as the trial judge may have considered his ninth finding of fact in deciding against appellant, we can find no error in the trial judge's action; the finding was supported by the evidence, and, under authorities previously cited, is binding upon us on appeal.

All the assignments are overruled, and judgment is affirmed.