Cost, Appellant, *v.* Dean.

Argued April 24, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*J. Thomas Hoffman,* for appellant.

*William H. Eckert*, with him *Rex Rowland* and *Smith, Buchanan & Ingersoll*, for appellee.

OPINION BY HIRT, J., July 17, 1947:

This is a dispute between lawyers over an attorney fee. Defendant, representing Sophia Krome, prosecuted her claim against the County of Allegheny to a successful conclusion. For this service he received $3,001.10— being 40 per cent of the amount recovered—under a contingent-fee agreement with her. Plaintiff had referred Sophia Krome to the defendant. In this case he contended that, in consideration of the referral, defendant agreed to share equally with him all attorney fees received by him in representing her in a number of related actions. At the trial of the present case it was conceded that the only issue was the existence of an agreement under which the plaintiff was entitled to one-half of the above fee. The verdict was for the defendant. Plaintiff has appealed from the refusal of a new trial.

Except on the controlling issue as to the existence of a split-fee agreement, there is little dispute as to the facts. In the early spring of 1941 Sophia Krome's husband was killed in an automobile accident caused by a defect in an Allegheny County road. She and her three children were in decedent's car and they were all injured. She consulted plaintiff in March 1941. He testified that he then had been called for military service and was arranging his affairs accordingly; that Sophia Krome engaged him to represent her in claims—for the death of her husband and for damages for her and her children's personal injuries—with the understanding that he would employ "a young man in [his] office" to try the cases for her. Plaintiff and defendant occupied offices in the same suite in the Jones Law Building in Pittsburgh but they were not associated in practice.

As to plaintiff's reaction to the recital of facts at the first conference, Sophia Krome testified that he said "it was a very weak case but I should meet him at some

later date." She saw him again on April 12, 1941 when, according to her testimony, he said that there was nothing he could do for her. He then conducted her into defendant's office and introduced her to him. She later retained defendant to prosecute all of the claims on a 40 per cent contingent-fee basis. In her name, defendant brought five suits against the County of Allegheny; three of them on behalf of her injured children, one as administratrix of the estate of her deceased husband and the action in her own right, with which we are especially concerned. Plaintiff did not appear in the cases nor assist in their preparation or trial. Defendant received a total of $2,540.23 in fees from recoveries in cases, exclusive of the action of Sophia Krome for damages for her own injuries. Of this amount, $550 paid to plaintiff on August 6, 1943, was accepted by him without protest. Defendant said the payment was a gift, in appreciation of plaintiff's referral of the cases to him, but he took a receipt from plaintiff, reciting that it represented settlement in full of plaintiff's "distributive share of attorney fees" of the Krome cases.

The case of Sophia Krome, which produced the fees in dispute here, was tried twice. A new trial was granted because of inadequacy of the first verdict. At the second trial in November 1943 she recovered a verdict of $12,500 which was conceded to be grossly excessive. Through the efforts of James P. McArdle, an attorney whom defendant employed for the purpose, the County of Allegheny agreed to pay $7,500 in settlement of the case. Out of the $3,001.10 attorney fees received by defendant on satisfaction of the verdict reduced to that amount, defendant paid McArdle $1,000 for his services and offered plaintiff $400. The offer was refused and this suit was then brought.

The verdict for the defendant is supported by the evidence. Plaintiff testified that defendant agreed to pay plaintiff one-half of all attorney fees collected. Defendant denied that he ever agreed to pay plaintiff anything.

The parties met on March 7, 1945 in their suite in the Jones Law Building in an unsuccessful attempt to settle the dispute in the presence of three other lawyers who had offices in the suite. One of them testified that defendant, in the course of the discussion, admitted "an agreement to divide the fee equally" with plaintiff. The other two had no recollection of an admission of any understanding as to a division of fees. The circumstances rebut every inference of an agreement to share fees equally. In the light of plaintiff's present attitude, it is not probable that he would have accepted $550 on August 6, 1943 as "his distributive share of [$2,540.23] attorney fees" in the first cases tried, if he then was actually entitled to $1,270.11. Plaintiff did not enter military service until more than one year after he had referred the cases to defendant, and a letter which he wrote the defendant on March 14, 1942 is inconsistent with a prior existing agreement of an equal sharing in fees. In the letter plaintiff stated: ". . . so far as the fee is concerned, whatever is recovered you arrange for the fee basis with the Kromes. But as to me, I feel that you should get the bulk of the fee, since you have done practically all of the work. All I did was to bring the case into the office."

Plaintiff asserted a right to one-half of the fees, and no lesser amount, in his statement of claim. And in the course of the trial the judge asked: "Isn't the issue here only that that $3,001.10 was collected and the plaintiff claims he is entitled to half of it and that that half has not been paid? Isn't that all there is to this case?" To this plaintiff's counsel replied: "I think so, your Honor." Plaintiff was consistent throughout in trying the case on that theory. On refusing defendant's final offer of a part of the fees, plaintiff testified that he said to him: "No, Charles, I don't want the $400. I want it all or nothing." In submitting the case on that issue the trial judge charged: "Therefore, your verdict will be either for the plaintiff for $1,500 or for the defendant. The record

admits of no other verdict. I tell you that as a matter of law." There was no error, fundamental or otherwise, in that instruction. The contest was as to the existence of the contract sued upon and not as to its terms, as it was in *Saxman v. McCormick*, 278 Pa. 268, 273, 122 A. 296. Since the case was tried on that issue, we may not review it on a theory different from that upon which it was presented in the lower court. *Penna. R. R. Co. v. Pittsburgh*, 335 Pa. 449, 6 A. 2d 907; *U. S. Gypsum Co. v. Birdsboro Steel Fdy.*, 160 Pa. Superior Ct. 548, 52 A. 2d 344.

And the court did not err in excluding evidence of a custom among lawyers in Allegheny County of an equal division of fees under like circumstances. True, plaintiff's statement of claim avers: "It was, at that time, orally agreed . . . in accordance with the usual and customary practice among attorneys in Allegheny County . . ." that the fee be split equally. But the statement in this respect does not charge liability measured by custom, as on quantum meruit (in which event the exclusion of the evidence would have been error 25 C. J. S., Customs and Usages, section 22) but by the terms of an express agreement specific in its terms as to an equal division of fees. Whether the contract upon which plaintiff relied coincided with custom among lawyers in dividing fees, where there is no specific agreement therefor, was immaterial and the exclusion of evidence of custom was proper. Custom cannot vary a contract specific as to terms. "The understanding of others, whether general or special, goes for nothing, if it be not also the understanding of the contracting parties": *Paull v. Lewis*, 4 Watts 402.

Plaintiff, at the close of the case did not suggest any amendments or corrections to the charge although invited by the trial judge. And notwithstanding he did not except to the charge he is entitled to the benefit of the general exception granted to both parties by the court of its own volition. But under a general exception

we may not grant a new trial except upon errors which are basic and fundamental. *Susser v. Wiley et al.,* 350 Pa. 427, 39 A. 2d 616. The remaining questions raised by appellant are not of that class. In any view, the court cannot be charged with such abuse of discretion (as will entitle plaintiff to a new trial, *Nark v. Horton Motor Lines, Inc.,* 331 Pa. 550, 1 A. 2d 655) because of the exclusion of evidence which was clearly incompetent; or the refusal to permit leading questions on direct examination; or in restricting the scope of cross-examination to keep it within proper limits.

Order and judgment affirmed.