## VICTORSON et al. v. ALBERT M. GREEN HOSIERY MILLS, Inc. et al.

### No. 10858.

United States Court of Appeals
Third Circuit.

Argued Jan. 22, 1953.

Decided March 27, 1953.

Rehearing Denied May 5, 1953.

---

to a dye house designated by plaintiff, and the first one hundred dozen were dyed and finished and were found to be satisfactory. On April 5, 1948, plaintiff ordered two thousand dozen of the same kind of hosiery, the order stating that the goods were to be "first quality in the greige, as before." The last two words, of course, meant that the stockings were to correspond to the previous sample lot. Eighteen hundred and three dozen pairs were shipped to the dye house between April 9 and September 17, 1948. Plaintiff accepted and paid for these stockings. On April 22, plaintiff had the second one hundred-dozen, sample order dyed and finished and was satisfied with the result. On August 5, plaintiff ordered the dye house to dye and finish one hundred dozen of the first shipment under the two thousand-dozen order. These, too, proved to be satisfactory. Nothing further was done until December 30, 1948, when plaintiff ordered 375 dozen to be dyed and finished. This was done by January 28, 1949, and these stockings were found to be very inferior. Plaintiff thereupon had a spot check made by dyeing and finishing two dozen from each of the remaining cartons (18 dozen in all) of the two thousand-dozen order, and these, too, were inferior. Plaintiff gave defendant notice of this fact on February 2, 1949, which was almost ten months after the first shipment under the two thousand-dozen order and more than four months after the last.

In answer to a specific interrogatory and upon ample evidence, the jury found that 1703 dozen were not as warranted.

▮ As would be expected, in view of the time elapsed before notice of the breach of warranty was given, defendant contended that plaintiff was barred because he had not given notice within a reasonable time after he should have known of the breach, as required by the Sales Act.[2] There is no

Hyman Zuckerman, Philadelphia, Pa., (Goff & Rubin, Philadelphia, Pa., on the brief), for appellants.

Samuel R. Wurtman, Philadelphia, Pa. (W. Belskin Ginsburg, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Defendant, a hosiery manufacturer, appeals from a judgment holding him liable to a jobber for breach of an express warranty of quality on a sale of women's stockings.

In February of 1948, plaintiff gave defendant two separate orders, each for one hundred dozen first quality, nylon hosiery in the greige.[1] These stockings were shipped

---

1. Hosiery "in the greige" means hosiery that is undyed and unfinished and still containing sizing and other chemicals used to make the knitting easier.

2. Since the district court sat in Pennsylvania in this diversity action, we must apply Pennsylvania substantive law, including its conflict of laws rules. Klaxon

Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. It is not denied that there was an express warranty of quality, and, thus, we need concern ourselves only with the Pennsylvania rule to the effect that whether the warranty was breached and, if so, what legal consequences resulted, including the measure of damages, are to

contention that plaintiff did not give notice of the breach within a reasonable time (five days) after he discovered it. The Sales Act, however, also requires that notice be given within a reasonable time after the buyer "ought to know of such breach." In order to satisfy this requirement, much of plaintiff's evidence, over defendant's objections, was an attempt to establish a general and well-recognized custom in the hosiery industry by which jobbers allow hosiery received in the greige to remain uninspected for indefinite periods. By special verdict, the jury found that such a custom did exist. Defendant tells us that the admission of evidence relating to the alleged custom was error because the custom had not been pleaded, and, furthermore, that the jury's finding cannot be sustained because the evidence of the custom was not of such weighty character as Pennsylvania requires to establish custom. However that may be, the jury made a third special finding, upon ample evidence, that, aside from the alleged custom, plaintiff gave notice of the breach of warranty within a reasonable time after he should have discovered it. Therefore, whether pleading the custom was necessary and whether the evidence was sufficient to establish it are of academic interest only and need not be discussed.[3]

Witnesses for both parties testified that hosiery jobbers buy in bulk lots from manufacturers in anticipation of future orders from customers. Those jobbers who are not dyers, when buying stockings in the greige, designate a dye house to which the manufacturer ships their orders. There the goods remain until the jobber receives orders from his customers, specifying quantity, size, and color. Then the jobber orders the dye house to dye and finish part of the bulk lot in accordance with the customer's order. Defendant was fully aware of the fact that plaintiff conducted his business in accordance with this practice. There also was evidence that, while the stockings are still in the greige, it is almost impossible to detect most defects except a few very obvious ones, such as holes, knots, or bad seams. Because of this, it cannot be determined whether the hosiery is first quality until it is dyed and finished. It is only after being processed that it can be graded. Defendant also knew that plaintiff did not inspect and grade until the hosiery had been dyed and finished.

The jury is the usual arbiter of what is a reasonable time.[4] It is only where the facts are undisputed or, even though disputed, they admit of only one inference and the court is free from doubt that it becomes a question of law.[5] The time involved here would appear to be rather long, but, considering the circumstances, we can-

be determined by the place of performance of the contract. York Metal & Alloys Co. v. Cyclops Steel Co., 1924, 280 Pa. 585, 124 A. 752. The offer was made in New York and was accepted by defendant in Pennsylvania, and delivery was made in Philadelphia. Pennsylvania was thus the place of contracting and the place of performance. Consequently, we look there for the applicable rules.

The pertinent section of the Sales Act is as follows: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach,

the seller shall not be liable therefor." Act of May 19, 1915, P.L. 543, § 49, 69 Purdon's Pa.Stat.Ann. § 259.

3. Nor need we remark upon the further question of whether Pennsylvania or federal law governs the quantum of proof necessary to establish custom.

4. Tinius Olsen Testing Machine Co. v. Wolf Co., 1929, 297 Pa. 153, 146 A. 541, 72 A.L.R. 718; United States Gypsum Co. v. Birdsboro Steel Foundry & Machine Co., 1947, 160 Pa.Super. 548, 52 A.2d 344; 3 Williston, Sales § 484a (rev. ed. 1948).

5. Tinius Olsen Testing Machine Co., Note 4 supra. But see Frantz Equipment Co. v. Leo Butler Co., 1952, 370 Pa. 459, 467, 88 A.2d 702, 707, where it is said that "What is a reasonable time within which to give such notice depends upon the circumstances of each case and is a question of law for the court."

not say, as a matter of law, that it was unreasonable.

The latent-defect cases constitute a well-recognized, separate category in the Pennsylvania decisions construing reasonable time.[6] In Industrial Rayon Corp. v. Caplan, 1937, 125 Pa.Super. 414, 418, 190 A. 185, 186, the Superior Court affirmed, per curiam, a judgment for the buyer, relying in great part on the opinion of the trial court. That opinion stated:

"It is contended upon the part of the Plaintiff [seller], that under section 49 of the Sales Act * * * it was the duty of the defendant to ascertain within a reasonable time after the receipt of the rayon that it was defective, in other words, that he should have known that it was defective before consuming three of the twelve cases of rayon. This might be so where the defect was ascertainable by inspection, but under the evidence in this case the defective quality of the rayon was not ascertainable until after dyeing and the plaintiff knew the business of the defendant as a manufacturer of coat linings and that he was not a dyer. Under the facts in this case, the defendant could rely on the express warranty of the plaintiff that the goods were first class and would dye evenly and uniformly, and it was not incumbent upon the purchaser to first manufacture some linings and then go to the expense of having them dyed for the purpose of ascertaining whether the goods were of first quality or not."

Plaintiff, however, did not proceed without any inspection at all. Before giving the two thousand-dozen order, he dyed, finished, and inspected the first one hundred-dozen, sample order. After four hundred dozen of the large order arrived, he dyed, finished, and inspected the second one hundred-dozen, sample order. After receiving all but two hundred dozen of the total ultimately shipped, he processed a third one hundred dozen. The three small lots processed proved to be first quality. As the district court said, the jury would have been justified in reasoning that in the beginning defendant was shipping first grade merchandise but that the quality fell off thereafter. It might well have appeared to them unreasonable to require a buyer of stockings in the greige to take the risk of dyeing and finishing the entire order before he had any idea of what colors or sizes he could sell, or to require more by way of initial inspection than plaintiff did.

This is not a case where the seller delivered the entire order at one time and the buyer waited ten months before making an inspection of the goods. Here the deliveries were spread out over a five-month period. The buyer inspected the two sample orders and found them satisfactory, and, almost six weeks before the last shipment, he inspected one hundred dozen stockings from one of the first shipments and found them to be as warranted. In view of this, it would not be an unreasonable assumption on his part that the remainder of the goods would be of the same quality.

We are told that, since the spot check of two dozen from each carton was a feasible test in January of 1949, it could just as well have been made sooner, as the shipments came in. We agree that a spot check could have been made sooner, but we think it was

6. This distinction is pointed out in Truscon Steel Co. v. Fuhrmann & Schmidt Brewing Co., 1937, 327 Pa. 10, 13, 192 A. 679, 680: "There are some cases which allow to purchasers apparently lengthy periods for discovery of defects in merchandise and notification of the seller. This is because considerable time may be needed, according to the nature of the goods, to ascertain whether a shipment complies with a warranty."

The latent-defect cases follow: Fred Wolstenholme, Inc. v. Jos. Randall & Bro., Inc., 1929, 295 Pa. 131, 144 A. 909 (defects in artificial silk discoverable only upon microscopic examination, or after silk made into cloth); Industrial Rayon Corp. v. Caplan, 1937, 125 Pa.Super. 414, 190 A. 185 (defects in rayon not discoverable by inspection but only after dyeing); Bennett v. Perlstein & Co., 1936, 124 Pa.Super. 65; 188 A. 97 (defective braid on dresses which scratched neck of wearer); Brown v. Unger, 1920, 36 Montg.Co.Law Rep. 195, appeal dismissed, 1929, 269 Pa. 471, 112 A. 531 (defects in yarn discoverable only after bleaching the finished material).

for the jury to say whether it should have been made, in addition to the tests that plaintiff did make.

The other questions raised by defendant, including the one concerning the measure of damages,[7] are all without merit.

Accordingly, the judgment of the district court will be affirmed.

7. The court's charge as to damages was as follows: "The law says that in the case of breach of warranty of quality— which this is—in the absence of special circumstances, the damages would be the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered the warranty." This is almost a quotation from the Sales Act. See Act of May 19, 1915, P.L. 543, § 69, 69 Purdon's Pa.Stat.Ann. § 314.