Morse-Boulger Destructor Company *v.* Mellon-Stuart Company, Appellant.

Argued November 19, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Charles C. Arensberg,* with him *Charles F. C. Arensberg* and *Patterson, Crawford, Arensberg & Dunn,* for appellant.

*Louis H. Artuso,* for appellee.

OPINION BY RHODES, P. J., January 21, 1958:

This is an appeal by defendant against which a judgment was entered in an action of assumpsit brought by plaintiff to recover the balance alleged to be due on the purchase price of a special industrial incinerator, which it had constructed on order from

defendant, and the cost of alleged repairs subsequently made to the incinerator.

Defendant, as general construction contractor, ordered the incinerator for use in burning the starch waste solution of the plant of the National Gypsum Company, at Alexandria, Indiana. In its answer to the complaint in assumpsit defendant filed a counterclaim in which it asserted that all repairs made were the result of plaintiff's faulty construction of the incinerator. Plaintiff, on the other hand, claimed that the repairs were made necessary by the fact that the waste material to be destroyed was not limited to solids of one per cent as represented by Pantech, Inc., agent for National Gypsum Company; that the solution in fact had a solid content approximating three per cent; and that it contained rock wool fibers which were nonsoluble.

The case was submitted to Judge MONTGOMERY, sitting without a jury, who found for plaintiff in the amount of the contract balance of $2,030.40, together with the cost of repairs incurred by plaintiff of $1,-397.94, less $666.46. The latter was the allowed expense which defendant incurred by reason of plaintiff's erroneous reversal of the burners in the original installation. Exceptions filed and argued before the court in banc were dismissed. Judgment was entered for plaintiff against defendant for $2,761.88, with interest from August 11, 1954, to May 3, 1957, a total of $3,213.61.

On this appeal, where the factual issues have been submitted to a judge, sitting without a jury, all findings of fact, if supported by the evidence and affirmed by the court in banc, are binding upon us on appeal. *United States Gypsum Company v. Birdsboro Steel Foundry & Machine Company,* 160 Pa. Superior Ct. 548, 555, 52 A. 2d 344; *Tinius Olsen Testing Machine*

*Co. v. Wolf Co.*, 297 Pa. 153, 157, 146 A. 541; *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company*, 385 Pa. 394, 402, 123 A. 2d 413.

The only formal evidence of a contract between the parties was a one-sheet order form dated August 1, 1953, under defendant's letterhead in which a short description was typed, addressed to plaintiff with directions to "Deliver or ship to Mellon-Stuart Company National Gypsum Corp. Alexandria, Ind." The following typewritten description was the sole designation of the type of machine ordered: "Furnish all labor, material and equipment to construct an incinerator capable of burning 2.083 gals. per minute of the starch waste solution of the above plant, including flame safety and hi-low temperature controls. Waste and gas piping to be furnished to unit by others. Electrical by others." The price specified was $8,640.

It is defendant's contention that this order blank constituted, in effect, an integrated contract, and that the trial judge erred as a matter of law when he considered as part of the contract the analysis of waste material furnished plaintiff by Pantech, Inc., agent for National Gypsum Company.

The record establishes that defendant's order or contract of August 1, 1953, followed an extensive correspondence between plaintiff, builders of the incinerator, and Pantech, Inc., an engineering firm acting for and on behalf of National Gypsum Company in connection with the latter's plant at Alexandria, Indiana. A clear comprehension of the negotiations is essential to an understanding of the contract. In the first letter which was dated March 17, 1953, plaintiff's sales representative, Reynolds-Shaffer Corporation, called plaintiff's attention to the fact that Pantech, Inc., was preparing an engineering report for

National Gypsum Company, and stated that one of their problems was the disposal of 2,000 gallons per day of "waste liquid solids" accumulated in the manufacture of acoustical tile. Two days later plaintiff wrote Pantech, Inc., requesting information as to the disposal problem. On March 27, 1953, Pantech, Inc., supplied plaintiff with a detailed analysis of the waste material to be consumed at the plant. In the same communication reference was made to various methods of disposing of the waste and to the type of incinerator to be used. The letter concluded: "It will be appreciated if you will give us an estimate of costs for a destructor of this type, including hourly gas consumption and installation or approximate manhours." On April 16, 1953, plaintiff again communicated with Pantech, Inc., and gave preliminary budget estimates for two types of incinerator. On June 1, 1953, Pantech, Inc., advised plaintiff's agent that—"we shall require the 16-hour unit,"—and that a "confirming purchase order" would follow. Thereafter, on three occasions, June 18, July 7, and July 23, 1953, plaintiff's sales representative wrote defendant explaining the preliminary negotiations between Pantech, Inc., and plaintiff, and the type of incinerator selected by Pantech, Inc. In one of the letters copies of preliminary drawings which indicated the general layout of the proposed incinerator were enclosed. A formal order was requested and this was forthcoming on August 1, 1953, as previously described.

We are of the opinion that the trial judge was correct in concluding that the order of August 1, 1953, was not a contract complete on its face, and that the preliminary correspondence, including the representations made by Pantech, Inc., to plaintiff concerning the percentage of solids in the waste solution, could be considered in arriving at and interpreting the con-

tract between plaintiff and defendant.[1]  It is apparent that the confirmatory order of August 1, 1953, was not the complete contract and did not embody the entire understanding of the parties.  It was necessary to resort to extrinsic evidence to establish the details of the contract.[2]  The type of incinerator to be built and the proper methods of disposal of the waste solution were technical engineering matters which had been the subject of lengthy negotiations between plaintiff, defendant, and Pantech, Inc., as agent for National Gypsum Company.  Under the circumstances, we find no merit in defendant's argument that the parol evidence rule applied.  On the contrary, extrinsic evidence was admissible to clarify the ambiguous description and show what the parties meant by the technical terms. *International Milling Company v. Hachmeister, Inc.*, 380 Pa. 407, 418, 110 A. 2d 186; *Rosenfeld v. Rosenfeld*, 390 Pa. 39, 49, 133 A. 2d 829; *Neville v. Scott*, 182 Pa. Superior Ct. 448, 452, 127 A. 2d 755.

The principal argument of defendant is to the effect that the analysis furnished by Pantech, Inc., showing the starch waste solution contained solids not exceeding one per cent, cannot be considered part of the contract between plaintiff and defendant under the the parol evidence rule.  An alternative argument of

---

[1] The trial judge made the following finding:

"After a thorough review of the testimony the Court is led to the conclusion that the incinerator as designed and built by plaintiff was sufficient to destroy the waste solution as analyzed by Pantech, Inc., with one percent solid material of a usual nature with provision for a reasonable variance not in excess of 1½ percent.  However, it was not sufficient to dispose of quantities of solids exceeding 1½ percent or of solids which could not be destroyed except at much higher temperatures, viz., rock wool fibers."

[2] The evidence admitted by the trial judge did not contradict and was not inconsistent with the written order. See Annotation, 70 A.L.R. 752.

defendant is that, assuming the analysis of Pantech, Inc., is part of the contract, defendant is not responsible for the acts of National Gypsum Company or its agent as there is no contractual relationship between the company, plaintiff, and defendant. Such arguments ignore the practical situation and the facts as found by the trial judge. The trial judge found "that defendant by issuing the formal order with knowledge that all details had been worked out by Pantech, Inc., for National Gypsum [Company] placed itself in the same position as National Gypsum Company would have been in had it placed the order." Certainly, defendant cannot disclaim responsibility for vital information knowingly furnished plaintiff by the party for whose use the machine was constructed. Defendant, by issuing the order based on the prior negotiations, adopted them as its own just as effectively as if it had directly participated. The finding of the trial judge that the contract necessarily included the analysis of the starch waste solution as a vital part of the agreement is conclusive against defendant, and further discussion of the rules applicable to three-party contracts and the law of principal and agent is unnecessary.

Finally, defendant alleges error in that the trial judge allowed defendant credit for a bill of $666.64 covering expenses allegedly due for correcting plaintiff's inadvertent reversal of the burners. Defendant contends that the amount should have been $2,736.24 allegedly representing the full amount of such expenses incurred by it. It is sufficient to say that the extent of damage due to plaintiff's error together with the cost of repairing the incinerator were also factual matters which were conclusively decided by the trial judge on conflicting evidence.

The judgment of the court below is affirmed.