Larry R. MOORE, Appellant

v.

**KULICKE & SOFFA INDUSTRIES, INC.**

No. 02–1466.

United States Court of Appeals, Third Circuit.

Feb. 3, 2003.

William A. Miller, Phoenix, for Appellant.

William J. Lehane, Wilson M. Brown, III, Lori A. Jackson, Amy B. Miner, Drinker Biddle & Reath, LLP, Philadelphia, for Appellee.

Before BECKER, Chief Judge, McKEE and HILL * Circuit Judges.

## OPINION OF THE COURT

BECKER, Chief Judge.

■ This is a trade secret misappropriation case arising under our diversity jurisdiction and governed by Pennsylvania law. At trial, the defense to the misappropriation claim was the "independent development" of the allegedly misappropriated technique. This appeal by plaintiff appellant Larry R. Moore ("Moore") from a judgment entered on a jury verdict in favor of the defendant Kulicke & Soffa Industries, Inc. ("K&S") presents the vexing question whether, in Pennsylvania trade secret law, independent development is an affirmative defense so that the proponent (here K&S) bears not only the burden of production but also the risk of non-persuasion, or whether raising the defense only shifts onto the proponent the burden of going forward, with the risk of non-persuasion remaining with the plaintiff. Although the question is close and difficult, we believe that Pennsylvania would conclude that only the burden of production is shifted when the defendant raises independent development, and that the ultimate burden of persuasion remains on the plaintiff to prove that the defendant did not arrive at a technique similar to the trade secret through its own independent development. Since Moore's appeal challenges the jury instruction, and this is what the

* The Honorable James C. Hill, United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

District Court charged, we will affirm the judgment.

## I.

K&S is a manufacturer and marketer of wire bonding equipment to companies involved in making computer chips for use in connecting the extremely small wires from semiconductor terminals to other components of computer chips. In 1981, Moore, an engineer, submitted a technical paper to a K&S consultant discussing a specific design approach and methodology for achieving greater speed and accuracy for the type of wire bonding machines that K&S manufactured. After reviewing the paper, K&S informed Moore that it had no interest in the information contained in his proposal. However, some time later, Moore learned that K&S was using in its equipment a wire-bonding technique that he believed was similar to the technique and information contained in the paper he had submitted. Moreover, Moore asserted that K&S had also obtained a patent using information similar to that contained in the proposal he had submitted to K&S.

Moore thereupon brought an action against K&S in the District Court for the Eastern District of Pennsylvania, setting forth a claim for trade secret misappropriation under Pennsylvania state law and a federal claim for copyright infringement. At the conclusion of the trial, the District Court instructed the jury:

> If you find that the plaintiff has proven by a fair preponderance of the evidence that the defendant used the plaintiff's

trade secret, and that the defendant did not arrive at the relevant wire bonding technique through independent invention, then you should find in favor of the plaintiff. On the other hand, if you determine that the wire bonding technique used by the defendant was developed through defendant's own independent efforts and invention, then you must find in favor of the defendant.

Perhaps responding to the statement of counsel for K&S that "[b]urden of proof is a little slippery here," the District Court had vocalized some concern about where to place the burden of proving independent development, representing that it had adopted the jury instruction proposed by K&S but "without the burden of proof on there." However, the language of the jury charge placed the burden of proving independent development on the plaintiff: As noted above, the District Court asked the jury, in the charge, to consider whether "the plaintiff has proven by a *fair preponderance of the evidence* that the defendant used the plaintiff's trade secret, *and that the defendant did not arrive at the relevant wire bonding technique through independent invention.*" (emphasis added). Moreover, the Court, in the generalized portion of the charge, placed the burden of proof on Moore.[1] Thus, under the Court's trial procedure, the burden of production shifted to K&S to present some evidence of independent development, but Moore, under the charge, retained the burden of proving independent development by a preponderance of the evidence.

---

1. The District Court instructed the jury that Moore had to prove his case by a preponderance of the evidence, showing the following:
First the plaintiff had valuable trade secrets. Second, the plaintiff communicated the trade secrets to the defendant in confidence and the defendant violated that confidence and misappropriated the trade secrets.

Third, the defendant actually used the secret information in breach of that confidence. And, fourth plaintiff suffered harm as a direct and proximate result of the defendant's use of the plaintiff's trade secrets.

■ Ultimately, the jury answered "no" to the following interrogatory:

Do you find that Plaintiff has proven by a preponderance of the evidence that he owned a trade secret which was disclosed in confidence to Defendant which Defendant was not entitled to use or disclose without Plaintiff's permission?

Although the interrogatory did not specifically mention independent development, the District Court had instructed the jury in the charge, set forth *supra*, to consider whether K&S independently developed the technique as part of its determination of whether the defendant "used" the plaintiff's trade secret. By answering "no" to this interrogatory, the jury thus rendered a verdict for K&S on the trade secret misappropriation claim. Moore moved for a new trial under Rule 59 of the Federal Rules of Civil Procedure, which the District Court denied. This appeal followed.[2]

■ The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1338. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review where the District Court erred in formulating or applying the proper legal precept regarding the burden of proof in a jury instruction. *See Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994) ("Where a jury charge is attacked for legal error we must determine whether 'the charge[taken] as a whole fairly and adequately submits the issues in the case to the jury.' We will reverse 'only if the

---

2. It is fundamental that to make out a claim for the misappropriation of a trade secret under Pennsylvania law, the plaintiff must establish the existence of a trade secret and the disclosure of that secret in a confidential relationship, see discussion in text *infra*. K&S asserts that any error in the jury instruction was harmless because the jury answered "no" to the interrogatory addressing the existence of a trade secret and its disclosure. This interrogatory read:

Do you find that Plaintiff has proven by a preponderance of the evidence that he owned a trade secret which was disclosed in confidence to Defendant which Defendant was not entitled to use or disclose without Plaintiff's permission?

Because the jury answered "no" to this question, it never reached the interrogatory that implicated independent development:

Do you find that Plaintiff has proven by a preponderance of the evidence that the Defendant misappropriated Plaintiff's trade secret?

The viability of this position depends on K&S's theory that the jury found that Moore had not demonstrated that his technique was a trade secret or that he did not disclose it to K&S—the first two elements of trade secret misappropriation which must be shown before independent development is ever reached. However, the initial question posed to the jury included an inquiry into whether

K&S *was entitled to use* Moore's trade secret, and the jury charge, set forth in the text, linked independent development to the element of use. "Use" is tied to independent development because the tort of trade secret misappropriation prohibits the wrongful use of another's trade secret; the defendant did not purloin the trade secret if it independently developed the technique. *See* discussion in text *infra*.

The interrogatory appears to have conflated the first three elements of trade secret misappropriation. In other words, the District Court did not ask the jury to specify whether it answered "no" because it found that Moore's technique was not a trade secret, or because he had not disclosed the trade secret to K&S in a confidential relationship, or alternatively because K&S had not "used" the trade secret since it independently developed the same technique. Morever, the District Court charged the jury about "independent development" in the context of discussing both of the interrogatories,

In both two and three [the interrogatories set forth], if your answer is no, obviously the plaintiff has not met his burden of proof.... Let me instruct you now on the essential elements of a trade secret.

Thus, because the jury may have considered whether K&S had independently developed the technique in answering the interrogatory, we conclude that the alleged error in jury charge was not harmless.

instruction was capable of confusing and thereby misleading the jury.'" (quoting *Bennis v. Gable,* 823 F.2d 723, 727 (3d Cir.1987)) (alteration in original) (citation omitted)).

## II.

### A.

At the risk of carrying coals to Newcastle, we discuss briefly the dual meaning of the term "burden of proof." We note that "[t]he two distinct concepts [embodied in the term 'burden of proof'] may be referred to as (1) the risk of nonpersuasion, sometimes called the 'burden of persuasion,' and (2) the duty of producing evidence (or the burden of production), sometimes called the burden of going forward with the evidence." Fleming James, Jr. & Geoffrey C. Hazard, et al., Civil Procedure § 7.12 (5th ed.2001). These two concepts can be distinguished by the fact that "[u]nlike the burden of persuasion, the burden of production can shift back and forth between parties during the trial." Larry L. Teply & Ralph U. Whitten, Civil Procedure 855 (2d ed.2000).

■■■ At the outset of a trial, the plaintiff has both the burden of production and the burden of persuasion for each element of the prima facie case. Once the plaintiff has met this burden, the defendant may proceed with an affirmative defense. At this point, the defendant has both the burden of production and the burden of persuasion for the affirmative defense. Often, "courts have confused the ideas of affirmative defense and negation by affirmative

proof." Fleming James, Jr. & Geoffrey C. Hazard, et al., Civil Procedure § 4.5 (5th ed.2001). A denial, as opposed to an affirmative defense, will simply shift the burden of production to the defendant to present evidence that would tend to rebut the plaintiff's case, while the burden of persuasion remains with the plaintiff. If the defendant cannot meet its burden of going forward by presenting some evidence, the plaintiff has met its burden of persuasion. But if the defendant presents some evidence to support the denial, the fact-finder weighs the evidence, bearing in mind that the plaintiff retains the ultimate burden of persuasion. K&S asserts that alleging independent development is a denial which shifts the burden of production but not the burden of persuasion to the defendant. In contrast, Moore would have us conclude that independent development is an affirmative defense and K&S has both the burden of production and persuasion.

### B.

#### 1.

■■■ Under Pennsylvania law, the prima facie elements of the tort of misappropriation of a trade secret are derived from the Restatement (First) of Torts § 757. *Van Products Co. v. General Welding & Fabricating Co.,* 419 Pa. 248, 258, 213 A.2d 769, 774 (1965).[3] Those elements are as follows: (1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff.[4]

---

**3.** The Restatement (First) of Torts § 757 states:

> one who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if (a) he discovers the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence re-

> posed in him by the other in disclosing the secret to him.
> *Van Products,* 213 A.2d at 774 n. 4.

**4.** The elements of a claim for misappropriation of a trade secret are usually stated in terms of the employer's burden. *See Van Products,* 213 A.2d at 775. ("To be entitled to

K&S contends that evidence of independent development rebuts the third element of the prima facie case: that the defendant "used" the plaintiff's trade secret. It bases this contention on the meaning of "use" within the context of trade secret law. The tort of trade secret misappropriation provides inventors and owners with a state law based alternative to the patent system. *See Van Products*, 213 A.2d at 778 ("The inventor is put to his election; he can keep his secret hidden and run the risk of independent discovery by others, or he can disclose his secret to the world ... and receive in return from the government a monopoly for 17 years."). Thus, unlike the patent system, which provides a remedy for any use of a technique similar to the patented technique, trade secret misappropriation protects against the wrongful use of the trade secret itself; it is the defendant's theft of the plaintiff's idea that this tort attempts to prevent. In other words, the element of "use" refers to improper use.

Independent development thus appears to be strongly linked to the "use" element in trade secret misappropriation cases because if the defendant developed the idea without reference to the trade secret, it did not purloin the plaintiff's idea. Moreover, Milgrim's treatise on trade secrets includes a discussion of "independent development" under the broader heading of "Wrongful Use or Disclosure." 4 Milgrim on Trade Secrets § 15.01[1][d][v] (2002). Milgrim writes:

> If defendant is not possessed of the training and skills necessary to develop

a secret process independently, defendant's *use* of the plaintiff's process is likely to be presumed wrongful in the absence of convincing proof to the contrary. Conversely, where defendant is possessed of substantial capacity to independently derive matter claimed secret by plaintiff, plaintiff may retain the burden of proving that defendant in fact misappropriated plaintiff's matter. *Id.*

In our view, it makes sense to tie independent development to the "use" element of trade secret misappropriation. If there is proof that the defendant independently developed a technique that resembles the trade secret, then the defendant did not "use" the trade secret.

**2.**

Because independent development is so closely linked to whether the defendant used the plaintiff's trade secret, K&S maintains that it is not an affirmative defense under Pennsylvania law and that K&S does not have the burden of persuasion. In support of this position, K&S argues that affirmative defenses are generally distinguished from other denials primarily by the fact that "affirmative defense[s] will require the averment of facts extrinsic to the plaintiff's claim for relief." 5 Standard Pennsylvania Practice 2d § 26.51 (2001); *see also Falcione v. Cornell School Dist.*, 383 Pa.Super. 623, 557 A.2d 425 (1989). We understand K&S's argument to be that because independent development is simply a denial of the fact that it used Moore's technique, and not an argument extrinsic to the facts alleged by

equitable relief, the burden was on [the employer] to show: (1) that there was a trade secret, or, as in the case at bar, a secret process of manufacture; (2) that it was of value to the employer and important in the conduct of his business; (3) that by reason of discovery or ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to [the employee] while he was employed in a position of trust and confidence, under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer.") (alterations in original) (citations omitted).

Moore—for example the expiration of the statute of limitations—we should conclude that independent development is not an affirmative defense. Under this taxonomy, once the defendant has asserted independent development, the burden of production simply shifts to the defendant, but the defendant retains the burden of persuasion.[5] On the other hand, Moore contends that the burden of proof of independent development—including the burdens of production and persuasion—should be placed on the defendant and that independent development should be effectively considered an affirmative defense. He maintains that Pennsylvania courts often place the burden of proof on the party that has the best access to information which could prove or disprove a fact, and here K&S has better access to information which could prove it independently developed the technique. *See Gen. Elec. Corp. v. Human Relations Comm'n*, 469 Pa. 292, 306–07, 365 A.2d 649, 657 (1976) (noting that pragmatic considerations dictate that party with access to facts should bear burden of proof). Moreover, Moore contends that independent development should be considered an affirmative defense because courts generally favor placing the burden of proof on the party who must prove a positive rather than the party who must prove a negative. 8 Standard Pennsylvania Practice 2d § 49:65 (2001) (noting that

it is the general rule that "the party having the negative of an issue will [not] have the burden of proof on such issue").

### 3.

In predicting Pennsylvania state law, we are guided by principles that are well-settled, though not always easy to apply. Where the highest court has not ruled on the issue, "we must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Nationwide Mut. Ins. v. Buffetta*, 230 F.3d 634, 637 (3d Cir.2000) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir.1980)). Since the Pennsylvania Supreme Court has not addressed the independent use doctrine, and the Superior Court has not either, (although *Falcione*, see *supra*, does provide useful guidance) we must look elsewhere. Both parties cite to a number of cases in which Pennsylvania law is arguably interpreted by non-Pennsylvania courts; they also cite cases interpreting the doctrine of independent development under other states' laws. None of these cases is binding and there appears to be no consensus on the issue, although we cite a number of them in the margin.[6] We also note that the authors of

---

**5.** Rule 8(c) of the Federal Rules of Civil Procedure lists the following as affirmative defenses:

> [A]ccord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

Most of the defenses listed in Rule 8(c) are consistent with K&S's argument that affirmative defenses are distinguished from denials

by the fact that they require the pleading of facts extrinsic to the plaintiff's cause of action.

**6.** While some other federal courts appear to have held that independent development is not an affirmative defense under Pennsylvania law, many of them do not clarify whether they are referring to the burden of production or the burden of persuasion, so it is sometimes difficult to determine the holding. *See e.g. Greenberg v. Croydon Plastics Co., Inc.*, 378 F.Supp. 806, 815–16 (E.D.Pa.1974) ("This inference [that defendants used the plaintiff's trade secret] may be over come by a

the major treatises dealing with trade secret misappropriation come to different conclusions about which party has the ultimate burden of proving independent development.[7] We will therefore make our holding based on the general principles of what constitutes an affirmative defense under Pennsylvania law.

## III.

### A.

We conclude that Pennsylvania courts primarily distinguish affirmative defenses from other denials by the fact that affirmative defenses require the averment of facts

extrinsic to the plaintiff's claim for relief. For example, in *Falcione*, the Superior Court of Pennsylvania found that the avoidance of liability because of the rescission of a contract was an affirmative defense that must be pleaded as such under the heading of "New Matter" because it is "clearly extrinsic to the plaintiff's claim for relief." 557 A.2d at 428; *see also Watson v. Green*, 231 Pa.Super. 115, 119, 331 A.2d 790, 792 (1974) ("New Matter properly contains averments of facts only if they are extrinsic to facts averred in the complaint."). The Superior Court reasoned that affirmative defenses must be pled sep-

---

showing by defendants that they arrived at the flavoring method independently .... we conclude that plaintiffs have proved by a fair preponderance of the evidence that the defendants did not arrive at the ... method through independent investigation."); *but see Henry Hope X–Ray Prod., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1341 (9th Cir.1982) (interpreting Pennsylvania law and concluding that "[w]here the plaintiff shows ... manufacture of a closely similar device by the defendants, the burden shifts to the defendant to show that, at the time, it could have arrived at the process by independent invention, inspection, or reverse engineering").

Courts interpreting independent development under the trade secret misappropriation laws of other states have come to differing results. *Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.*, 365 F.2d 742, 749–750 (3d Cir.1966) (interpreting New Jersey law, which is also based upon the Restatement (First) of Torts § 757, and finding that "a heavy burden of persuasion rests upon one so charged to show that the production was the result of independent development and not from the use of information confidentially reposed"); *but see Pioneer Hi–Bred Int'l v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226, 1241 (8th Cir.1994) (noting in a case brought under Iowa trade secret misappropriation law that "[t]he court's ... discussion of 'burden shifting' merely expresses its appreciation of the fact that once [the plaintiff] produced convincing evidence of misappropriation, [the defendant] was obligated to provide persuasive evidence of lawful derivation.... The

court's procedure can simply be read as an allocation of the burdens of going forward with the evidence").

7. Milgrim appears to believe that asserting independent development simply shifts the burden of going forward to the defendant. *See* 4 Milgrim on Trade Secrets, § 15.01[1][d][v] (2002) ("[W]here defendant is possessed of substantial capacity to independently derive matter claimed secret by plaintiff, plaintiff may retain the burden of proving that defendant in fact misappropriated plaintiff's matter."). However, in a footnote for this proposition, Milgrim cites to *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. 410, 418–419 (E.D.Pa.1980). In the view of the opinion writer, who was also the author of *Anaconda*, the text of that opinion is not authority for the proposition that alleging independent development simply shifts the burden of going forward to the defendant. On the other hand, Callmann writes "when the defendant has had access to the trade secret, the burden is on him to establish an independent development defense." 2 R. Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 14.40 (4th ed.1993). However, Callmann's authority is underwhelming. For example, the treatise cites to *Henry Hope* for this proposition, a case in the U.S. Court of Appeals for the Ninth Circuit, in which the court relied on *Greenberg*, a case from the District Court for the Eastern District of Pennsylvania interpreting Pennsylvania law, the difficulties of which are laid out *supra* in footnote 6.

arately because they raise a new set of facts. By placing those facts under the separate heading "New Matter," the plaintiff will be on notice that it must address a new set of facts.

Further support for this proposition can be found in the term "New Matter," which itself suggests that affirmative defenses require the establishment of a separate set of facts. See 5 Standard Pennsylvania Practice 2d § 26:50 (2001) (" 'New Matter' is a matter which, taking all the allegations of the complaint to be true, is nevertheless a defense to the action, and includes affirmative defenses." (citing *Pisiechko v. Diaddorio*, 230 Pa.Super. 295, 299–300, 326 A.2d 608, 610 (1974))). Moreover, 5 Standard Pennsylvania Practice 2d § 26.51 (2001) lists the following illustrations of "[a]verments of a defendant which are intrinsic to the cause of action pleaded by the plaintiff [that] do not constitute a new matter":

> A defense that the defendant city was operating a vehicle "under an emergency" was not an affirmative defense, but a denial of the plaintiff's assertion of negligent operation and was not properly pleaded as a new matter. An allegation that the defendant was not in control of premises and that a third person was in control and an averment that an oral contract did not exist and that a written one with different terms did were denials and should not have been pleaded as new matter. In an action to recover a balance due from a former employer, deductions claimed in the answer for credits unauthorized by the defendant but allowed to a customer by the plaintiff, were not new matters. (citations omitted).

 From this we conclude that affirmative defenses in Pennsylvania law require the establishment of facts extrinsic to the plaintiff's complaint. Considering

the analysis above about the extrinsic nature of affirmative defenses and concluding that independent development is inextricably linked to whether the defendant "used" the plaintiff's trade secret, we believe that Pennsylvania would hold that independent development is *not* an affirmative defense, but that it only shifts the burden of going forward.

### B.

Our analysis does not end here since the extrinsic fact requirement is not the only basis on which a countervailing argument is termed an affirmative defense. See Fleming James, Jr. & Geoffrey C. Hazard, et al., Civil Procedure § 4.5 (5th ed. 2001) ("These factors [that determine whether an argument should be considered an affirmative defense] include a formal test, the analytic distinction between negation of a fact and the avoidance of it by other facts, relative accessibility to the evidence, convenience ..., a desire to place handicaps against disfavored but permitted defenses, and the opposing party's need for special notice."). However, we conclude that the Pennsylvania Supreme Court would not hold that independent development is an affirmative defense because of "a desire to place handicaps against disfavored but permitted defenses." *Id.* Indeed Pennsylvania law already makes it difficult for the plaintiff to recover under the tort of trade secret misappropriation, suggesting that Pennsylvania would continue to favor the defendant in the trade secret context.

For example, in *Van Products*, the Supreme Court of Pennsylvania limited the first element of trade secret misappropriation: the requirement that the plaintiff possess a trade secret. The Court held that under Pennsylvania law, there is no trade secret if, "at the time of disclosure or use by a misappropriator, the allegedly secret information could have been ascer-

tained by inspection of sold articles or by reverse engineering." *Henry Hope,* 674 F.2d at 1341 (citing *Van Products,* 213 A.2d at 779 in which the Pennsylvania Supreme Court concluded that the Court of Appeals for the Seventh Circuit was incorrect when it held that "Pennsylvania will not deny recovery merely because the design *could have* been obtained through inspection." (quoting *Smith v. Dravo Corp.,* 203 F.2d 369, 374 (7th Cir.1953))); *see also Den–Tal–Ez, Inc. v. Siemens Capital Corp.,* 389 Pa.Super. 219, 247, 566 A.2d 1214, 1228 (1989) (calling into question the validity of *Smith* after *Van Products,* which "has been construed to have adopted the 'property' view of trade secrets and to have shifted the emphasis from whether the conduct of the defendant conformed to its confidential relationship with the plaintiff to a close analysis of whether the information was truly a trade secret").

The fact that Pennsylvania places the emphasis on whether the trade secret was truly a secret even when there is evidence that the defendant acted improperly—in a way that other jurisdictions do not—suggests that the Supreme Court would place the burden of proving independent development on the plaintiff for policy reasons. *See e.g. New York Spool Corp. v. Industrial Paper Tube,* 160 A.D.2d 194, 195, 553 N.Y.S.2d 164 (1st Dept.1990) (citing cases in which "it was no defense that the defendants could have arrived at similar processes through independent analysis that was theoretically possible but never actually undertaken"); *A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio,* 73 F.2d 531, 538–39 (6th Cir.1934) ("The mere fact that the means by which a discovery is made are obvious ... cannot ... advantage the competitor who by unfair means, or as the beneficiary of a broken faith, obtains the desired knowledge without himself paying the price in labor, money, or machines expended by the discoverer.").

On the other hand, it is true that Pennsylvania courts will often place the burden of proof on the party that has better access to facts that would prove or disprove the defense. *See Barrett v. Otis Elevator Co.,* 431 Pa. 446, 452–53, 246 A.2d 668, 672 (1968) ("If the existence or nonexistence of a fact can be demonstrated by one party to a controversy much more easily than by the other party, the burden of proof may be placed on that party who can discharge it most easily."). Admittedly, in the case at bar, K&S has the best access to information which could prove or disprove that it independently development a technique similar to Moore's trade secret. However, Pennsylvania courts have also held that "[t]he mere fact that the employer is in possession of facts relating to employment decisions is not reason to discard the normal requirement that complainants prove their own cases." *Commonwealth Dept. of Transp. v. Pennsylvania Human Relations Comm'n,* 510 Pa. 401, 413, 508 A.2d 1187, 1193 (1986). The fact that K&S has better access to the information does not weigh heavily in our analysis because Rule 26 of the Federal Rules of Civil Procedure requires that the defendant, upon request, turn over relevant information to the plaintiff during the discovery process. Moreover, by shifting the burden of going forward to K&S, we are assured that K&S must present some evidence of independent development to succeed.

Additionally, Pennsylvania courts are often reticent to place upon a party the burden of proving a negative. *See Barrett,* 246 A.2d at 673 ("The burden of proof may be placed on the party who must prove the existence of a fact rather than on the party who must prove its nonexistence."). However, we conclude that this policy is counterbalanced by "the normal requirement that complainants prove their own cases." *Commonwealth Dept. of Transp.,* 508 A.2d

at 1193. *See also U.S. Gypsum Co. v. Birdsboro Steel Foundry & Mach. Co.*, 160 Pa.Super. 548, 557, 52 A.2d 344, 348–49 (1947) ("But where a negative is essential to the existence of a right, the party claiming the right generally has the burden of proving such negative." (citation omitted)); 8 Standard Pennsylvania Practice 2d § 49:65 (2001) ("Where, however, proof of a negative is essential to show the existence of a right, the party claiming the right ordinarily has the burden of proving the negative. Thus, where the plaintiff, in showing negligence in the operation of a railroad train, relies on the fact that the train whistle was not sounded, the plaintiff has the burden of proving the negative." (citations omitted)).

■■■ In other words, where proving a negative "lie[s] at the foundation of plaintiff's right of action," the burden of proof will remain with the plaintiff. *Carl v. Grand Union Co.*, 105 Pa.Super. 371, 376, 161 A. 429, 431 (1932). Since independent development is inextricably linked to "use" in trade secret misappropriation, we conclude that it is necessary to disprove independent development—when raised—in order to meet the burden of proving the element of use.

## C.

In sum, while there are some indications that the Pennsylvania Supreme Court would conclude that independent development is an affirmative defense, the more persuasive factors suggest that raising independent development simply shifts the burden of production to the defendant. In particular, Pennsylvania courts seem to distinguish affirmative defenses from denials by the fact that affirmative defenses require the averment of facts extrinsic to the plaintiff's complaint. However, independent development is *intrinsic* to whether the defendant "used" the plain-

tiff's trade secret, supporting the conclusion that independent development is not an affirmative defense.

■■■ Pennsylvania law also suggests that the courts would not place the burden of proving independent development on the defendant for policy reasons; the Pennsylvania Supreme Court has already made it difficult for plaintiffs to recover in a claim for trade secret misappropriation. Although the defendant has better access to the facts to prove independent development, this is not a strong factor in favor of making independent development an affirmative defense here considering that the plaintiff can gain access to the defendant's information through discovery. Finally, while Pennsylvania courts do not generally place the burden of proof on a party that must prove a negative, we note that this factor is counterbalanced by the requirement that a party must prove a negative where it is essential to establish the existence of a right. Since independent development is essential to whether the defendant "used" the plaintiff's trade secret, we conclude that the plaintiff must disprove independent development in order to make out the elements of the tort of trade secret misappropriation.

Thus, when we consider the factors which aid in determining whether an argument must be pled as affirmative defense—the analytic distinction between negation of a fact and the avoidance of it by other facts, relative accessibility to the evidence, convenience ... a desire to place handicaps against disfavored but permitted defenses, and the opposing party's need for special notice, *see* Fleming James, Jr. & Geoffrey C. Hazard, et al., Civil Procedure § 4.5 (5th ed.2001)—it appears that independent development is not an affirmative defense under Pennsylvania law.

## IV.

Our decision is buttressed by K&S's analogy to "independent creation" in copyright law where the ultimate burden of proving independent development by a preponderance of the evidence remains on the plaintiff. Like the doctrine of independent development, under independent creation a defendant can show that it did not steal the plaintiff's copyrighted material by presenting evidence that it developed the idea without reference to the copyrighted material. In *Keeler Brass Co. v. Continental Brass Co.*, the Court of Appeals for the Fourth Circuit, in concluding that the doctrine of independent creation in copyright law only shifts the burden of production to the defendant, explained "the distinction between rebuttable inferences and shifting burdens of proof":

> When a plaintiff successfully creates a presumption, he not only satisfies his burden of going forward but also shifts that burden to the defendant. The defendant then must rebut the presumption to satisfy his burden of going forward. If the defendant fails to introduce sufficient evidence to rebut the presumption, the plaintiff might prevail on the strength of the presumption. When the defendant introduces sufficient rebuttal evidence, however, the fact finder then will consider all of the evidence on the issue. Regardless of these proof schemes, the burden of persuasion normally remains on the plaintiff for his claim throughout the trial.

862 F.2d 1063, 1066 (4th Cir.1988). The Court of Appeals for the Ninth Circuit similarly explained that independent creation only shifts the burden of going forward to the defendant in *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 723 (9th Cir.1976), affirming the holding of *Overman v. Loesser*, 205 F.2d 521, 523 (9th Cir.1953) in which the Court stated:

> The burden of proof, i.e., the risk of non-persuasion, remains on the plaintiff throughout the presentation of the case, unless it is declared to be elsewhere by statute or practice. In a suit for copyright infringement the plaintiff must prove that his copyrighted composition has been copied by the defendant, that is, he has the burden of establishing the requisites of the case. The plaintiff may, however, create an inference of copying by establishing access to the allegedly infringed work by the defendant and similarity or identity between disputed works. But, although there is evidence in the case from which an inference of copying could be drawn, the defendant may rebut it by proof of his prior composition. Since proof of prior composition requires an affirmative offering of evidence by the defendant, there occurs what may be referred to as a shift in the duty of "going forward."

Moore asserts that independent development is just as analogous to the concept of "fair use" in copyright law as it is to independent creation, and fair use is an affirmative defense. 2 McCarthy on Trademarks and Unfair Competition § 11:49 (4th ed. 2002) ("Fair use is an affirmative defense."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (holding that since fair use is an affirmative defense, the proponent carries the burden of proof). Fair use is defined as "a privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted by the copyright." 2 Paul Goldstein, Copyright: Principles, Law and Practice § 10.1 (1989). Fair use assumes that the defendant used

the copyrighted material, but provides a limited excuse. Thus, fair use requires extrinsic facts about the reasonable use of the copyrighted material. Independent creation, in contrast, is more like independent development—it is substantially the same concept in the copyright context. Independent creation is a denial that the defendant "used" the copyrighted material; instead the defendant created the idea without reference to the copyrighted material.

## V.

For the foregoing reasons, the District Court's charge to the jury placing the ultimate burden of proving independent development on the plaintiff was correct. We will therefore affirm the judgment.

HILL, *Circuit Judge, concurring.*

I concur in that part of the panel opinion affirming the judgment of the district court. I do not join in the discussion of the burdens of proof, persuasion and production of evidence on the issue of the defendant's "use" of plaintiff's trade secret and the district court's instruction to the jury in this regard. I do not because I believe that this discussion is unnecessary.

The judge instructed the jury that there are four essential elements of a trade secret claim: first, that the plaintiff had a trade secret; second, that he communicated this secret to the defendant in confidence and the defendant was not entitled to use it without his permission; third, that the defendant did use the secret without permission; and fourth, that the plaintiff suffered damage as the result.

In this case, the jury was asked a series of interrogatories corresponding to these elements. It answered "No" to the following interrogatory:

Do you find that Plaintiff has proven by a preponderance of the evidence that he owned a trade secret which was disclosed in confidence to Defendant and which Defendant was not entitled to use or disclose without Plaintiff's permission?

In so doing, the jury closed the door on plaintiff's misappropriation of trade secret claim. No further examination of the claim was necessary. The plaintiff failed to prove the first element of his claim—that he had a trade secret which he disclosed to the defendant.

The panel opinion, however, examines a different element of plaintiff's claim—whether the defendant misappropriated plaintiff's trade secret by actually using it in developing its own product. Since the jury found there was no trade secret communicated to the defendant, I do not see the necessity of discussing whether the defendant wrongfully used the non-existent trade secret communicated to it.

The panel explains in footnote 2 why it felt compelled to undertake this discussion. The panel believes that the district court's instruction as to the defense of "independent development" of the defendant's product could have influenced the jury's answer to interrogatory # 2 because that interrogatory inquired as to the defendant's entitlement to *use* plaintiff's secret (asking whether the defendant was *"entitled* to use the secret"). The panel believes that this construction of the interrogatory "conflates" the elements of the existence and communication of the trade secret with the wrongful use of the trade secret in a way which does not allow us to know exactly what the jury found when it answered "no" to this question.

I believe, however, that the issues of *independent* development and *use* of the plaintiff's trade secret are mutually exclusive. If the defendant developed a product

independently, it did not use the plaintiff's trade secret. If the defendant used the plaintiff's trade secret, then it did not independently develop its own product. Therefore, the instruction as to independent development, whether correct or not, would have had no effect whatsoever on the issue of use *vel non*.

So, in my view, the case is simple. The jury found the very first criterion for a trade secret claim not to exist. The case is over. I concur in the judgment affirming.