# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-20504

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2014

Lyle W. Cayce
Clerk

In the Matter of: VINCENT C. JACKSON,

Debtor.

-----------------------------------------------------------------------------------

VINCENT JACKSON,

Appellant,

v.

GOINS UNDERKOFLER CRAWFORD & LANGDON, L.L.P.; JOHN J. SHEEDY,

Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:12-CV-2404

Before DAVIS, ELROD, and COSTA, Circuit Judges.

PER CURIAM:*

This appeal requires us to again consider when the doctrine of judicial estoppel bars a debtor from pursing legal claims he failed to disclose in bankruptcy court, an issue on which this Court has provided much guidance

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20504

in recent years. *See Love v. Tyson Foods, Inc.*, 677 F.3d 258 (5th Cir. 2012); *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) (en banc). The bankruptcy court applied estoppel after finding that the debtor's failure to disclose his legal claim and other assets was not inadvertent. The bankruptcy court acted within its discretion and consistent with our recent case law in reaching that conclusion, so we affirm.

## I.

In 2001, Vincent Jackson obtained a patent related to the "storage and transfer of games and music over a cellular network to be played out on portable devices." Approximately two years later, he hired Goins, Underkofler, Crawford & Langdon, L.L.P. (GUCL) to represent him in legal matters related to the patent. His lawyer at GUCL, John Sheedy, ended up negotiating a Patent Marketing Agreement between Jackson and Sovereign Management Group (SMG), a venture capital firm, which split patent revenues 55%/45% in Jackson's favor. The parties then decided to seek reissuance of the patent and amended their agreement. These amendments, signed in February 2005, altered the parties' revenue shares, assigned title in any reissued patent to SMG, and required that SMG pay Jackson $150,000 if the reissue process failed. Sheedy represented both sides in these transactions, and Jackson contends that Sheedy failed to disclose a prior close relationship he had with SMG's President.

In late 2006, Jackson filed a Chapter 7 bankruptcy petition. Jackson did not list the patent, his contingent right to $150,000, or any claims against GUCL or Sheedy in the required schedules. His only mention of the patent during the bankruptcy proceeding came during an off-the-record interview with the bankruptcy trustee, but the trustee's notes from that interview state that Jackson described it as an "old cellphone program" with "no value."

2

No. 13-20504

More than four years after Jackson obtained a discharge in his bankruptcy case—and with the reissue of the patent near—Jackson sued GUCL, Sheedy, and SMG in state court for breach of fiduciary duty, malpractice, and other claims.  GUCL and Sheedy sought dismissal on the ground that Jackson was estopped from asserting a claim against them that he failed to disclose in the bankruptcy case.  In response to that state court motion, Jackson moved to reopen his Chapter 7 case and amend his schedules to include the omitted assets, including not just the legal claims he was trying to assert in state court but also the patent itself and his contractual rights against SMG.

The bankruptcy court conducted a hearing over multiple days after which it issued a lengthy opinion finding that judicial estoppel applied because Jackson knew about these assets when he filed his bankruptcy schedules and his failure to disclose them was not inadvertent.  *See In re Jackson*, 2012 WL 3071218, at *32 (Bankr. S.D. Tex. July 27, 2012).  Jackson unsuccessfully appealed to the district court and now seeks review in this Court.

## II.

A bankruptcy court may apply judicial estoppel when: (i) the debtor has asserted a legal position which is plainly inconsistent with a prior position; (ii) the bankruptcy court accepted the prior position; and (iii) the debtor did not act inadvertently.  *Reed*, 650 F. 3d at 574.  As an equitable doctrine, however, judicial estoppel is "not governed by 'inflexible prerequisites or an exhaustive formula.'"  *Love*, 677 F.3d at 261 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).  "Judicial estoppel is particularly appropriate [when] a party fails to disclose an asset to a bankruptcy court,

3

but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

The bankruptcy court found that to be the situation in this case. It concluded that Jackson's attempt to bring claims against his patent lawyers in state court was inconsistent with his failure to disclose any assets related to the patent in bankruptcy court, which issued a "no asset" discharge based on the nondisclosures. The bankruptcy court further found that Jackson's failure to disclose these assets was not inadvertent because Jackson knew of his interest in these assets and had motive to not report them.

Under the abuse-of-discretion standard that governs this Court's review of a bankruptcy court's judicial estoppel ruling, *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999), we do not see any basis for disturbing the estoppel finding. The bankruptcy court based its ruling in large part on credibility determinations, to which we owe great deference. *See In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir. 2013) ("Factual findings 'based on determinations regarding the credibility of witnesses' demand 'even greater deference' because 'only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985))). Among the many reasons the bankruptcy court did not credit Jackson's claim that his failure to disclose the patent-related assets was inadvertent are the following: Jackson testified that he thought he no longer had any interest in the patent when he completed the schedules, but in the sixty days prior to filing his bankruptcy petition he wrote two letters in which he referred to the patent as "my patent" or "Jackson's patent" a combined sixteen times; Jackson failed to list the patent in a form his bankruptcy lawyer had clients fill out that specifically asked about any interest in patents; and Jackson offered no

explanation for his failure to disclose the $150,000 conditional payment. *In re Jackson*, 2012 WL 3071218, at \*19–\*20.

With respect to whether Jackson had knowledge of these assets when he filed his bankruptcy petition, he undoubtedly knew about the patent and his agreements with SMG. Although his knowledge in 2006 of a legal claim against his lawyers might not be as clear cut, the bankruptcy court did not abuse its discretion in concluding that he knew of the facts underlying that claim. *In re Swift*, 129 F.3d 792, 795–99 (5th Cir. 1997) (holding that a claim begins accruing upon the occurrence of the injury for purposes of determining whether the claim was an asset at the time of a bankruptcy proceeding). Jackson himself "conceded that he believed Sheedy was working against his (i.e. the Debtor's) interest almost two years prior to the petition date." *In re Jackson*, 2012 WL 3071218, at \*19. And a state court had issued an order in early 2005 stating "that Sheedy had a conflict of interest." *Id.* Given these facts, it was well within the bankruptcy court's discretion to find that Jackson was aware of his claims against GUCL and Sheedy when he field his bankruptcy petition.

Jackson also contends that the bankruptcy court's finding that "GUCL, Sheedy, and SMG have unclean hands" in this matter should preclude the application of judicial estoppel. *Id.* at \*40. But the doctrine of judicial estoppel "is intended to protect the judicial system, rather than the litigants." *In re Coastal Plains, Inc.*, 179 F.3d at 205 (citation and emphasis omitted). The bankruptcy court's ruling does not allow GUCL and Sheedy to get off scot-free. The estate can pursue the claims Jackson asserted, and if successful, the bankruptcy court ordered that any recovery exceeding the $40,538.00 in remaining claims would either escheat to the United States or be "made available to public interest, charitable, educational, and other

No. 13-20504

public service organizations." *See In re Jackson*, 2012 WL 3071218, at *40–41.

For the above reasons and the additional ones relied on by the bankruptcy court in its thorough order, the judgment is AFFIRMED.